**Scott Allen HAIN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–94–1196.**

Court of Criminal Appeals of Oklahoma.

June 7, 1996.

John Thomas Hall, Tulsa, for appellant, at trial and on appeal.

James Michael Rogers, Tulsa, for appellant, at trial.

Lantz McClain, District Attorney, Sapulpa, for State, at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, for State, on appeal.

*OPINION*

LUMPKIN, Judge.

Appellant Scott Allen Hain was tried by jury and convicted of two counts of Murder in the First Degree (21 O.S.1981, § 701.7.), two counts of Kidnapping (21 O.S.1981, § 741), two counts of Robbery with a Firearm (21 O.S.1981, § 801), one count of Third Degree Arson (21 O.S.1981, § 1403), and two counts of Larceny of an Automobile (21 O.S. 1981, § 1720), Case No. CRF–87–240, in the District Court of Creek County. In *Hain v. State,* 852 P.2d 744 (Okl.Cr.1993), this Court reversed with instructions to dismiss the conviction for Robbery with Firearms and affirmed all other convictions. The death sentences imposed for the murder convictions were vacated and the case was remanded to the District Court for new second-stage proceedings. Retrial of the sentencing stage was held before the Honorable Donald Thompson. The jury found the existence of three aggravating circumstances and recommended the punishment of death for each count of murder. The trial court sentenced accordingly. From these judgments and sentences Appellant has perfected this appeal.

Appellant was found guilty of committing the murders of Laura Lee Sanders and Michael Houghton. The facts of this crime are set forth in *Hain,* at 746–747.

## PRE–TRIAL ISSUES

In his fourth assignment of error Appellant contends the trial court erred in overruling his motion for a change of venue and his motion to recuse the prosecutor. In a pretrial hearing, Appellant offered in support of his motion for a change of venue, certain political advertisements submitted by the prosecutor and published in newspapers of general circulation in the judicial district. Appellant found the advertisements objectionable for referring to himself and co-defendant Lambert as "notorious" and stating that the prosecutor had obtained murder convictions on Appellant and his co-defendant and that the victims burned to death in the trunk of a car. In addition, Appellant offered a letter to a local newspaper written

by the mother of one of the victims stating that the prosecutor should be re-elected to his office because of his investigation, prosecution and conviction of those responsible for her child's death.

Appellant also presented an affidavit from the defense investigator which stated that three or more persons refused to sign an affidavit stating that Appellant could not get a fair trial in Creek County. Appellant charged there was a conspiracy of silence in the community which prevented him from obtaining the statutorily required affidavits. A local criminal defense attorney testified that in his opinion Appellant could not get a fair trial in that jurisdiction.

Despite Appellant's failure to supply the statutorily required affidavits, the trial court heard argument and ruled that Appellant had failed to show the pre-trial publicity was so extensive as to prevent the impaneling of impartial jurors. The trial court agreed to re-examine the issue during voir dire if necessary. Subsequently, the motion was reargued by Appellant at the beginning of voir dire. The court reserved ruling until after voir dire at which time the motion was denied. Now on appeal, Appellant argues that in addition to the above, a change of venue was warranted because of general pre-trial publicity and the prosecutor's involvement in a campaign to unseat certain judges of The Oklahoma Court of Criminal Appeals because of the remanding of this case for new sentencing proceedings.

■ Title 22 O.S.1981, § 561, provides that a request for a change of venue must be accompanied by affidavits of at least three (3) credible persons who reside in said county. Appellant failed to comply with this statutory requirement. He offers no support for his charge that a conspiracy of silence prevented him from obtaining the requisite affidavits. We find his unsupported allegations insufficient to excuse him from statutory compliance. Consequently, the issue has been waived and is therefore not properly before this Court. *Brown v. State*, 871 P.2d 56, 61 (Okl.Cr.), *cert. denied* —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994).

■ We review only for plain error and find none. Our analysis begins with the rebuttable presumption that the accused can receive a fair trial in the county in which the offense occurred and the burden of persuasion is on the accused, who must show actual exposure to the publicity and resulting prejudice by clear and convincing evidence. *Id.* at 62; *Shultz v. State*, 811 P.2d 1322, 1329 (Okl.Cr.1991).

■ Merely showing that pre-trial publicity was adverse to him is not enough. *Bear v. State*, 762 P.2d 950, 953 (Okl.Cr. 1988). In cases going to trial in which a change of venue has been denied, the relevant inquiry on appeal is whether the accused received a fair trial from jurors who could lay aside any personal opinions and base a verdict on the evidence. *Braun v. State*, 909 P.2d 783, 792 (Okl.Cr.1995), *cert. denied* —— U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 559 (1996). The burden of persuasion still lies with the accused to show by clear and convincing evidence the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be held therein. *Id.*

■ We apply a two-pronged test to determine whether a due process violation occurred as a result of juror knowledge and pre-trial publicity. Prejudice may be presumed where the fact pattern reveals that the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceeding. *Bear*, 762 P.2d at 953. The key to this standard appears to be whether the proceedings against the accused were "entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob." *Braun*, at 792 quoting *Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594 (1975).

■ In *Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th.Cir.1994) the Tenth Circuit Court of Appeals said that in order to establish the presumption of prejudice, the defendant must show "an irrepressibly hostile attitude pervaded the community." If the facts are

not sufficiently egregious to give rise to a presumption of prejudice, the totality of the circumstances will be examined to determine whether the accused received a trial which was fundamentally fair. *Braun*, at 792–93. This review should focus·on the voir dire statements of the individual jurors, voir dire statistics, and the community atmosphere as reflected in the news media. *Id.*

■ The record in the present case does not reflect "an irrepressibly hostile attitude pervaded the community" or that the influence of the news media pervaded the proceeding. While we do not have any newspaper clippings of the trial before us, there is no indication the news media itself created a hostile attitude in the community toward Appellant. Further, Appellant has not asserted that any articles appearing in the local newspapers were not factual accounts or that they were invidious or inflammatory in nature.

■ The prosecutor's political advertisements do not concern us. But these advertisements, published one month prior to the start of the re-trial, which specifically applaud the prosecutor for securing a conviction against Appellant and labeling Appellant "notorious", are potentially inflammatory and prejudicial. When combined with the opinion of a local defense attorney that Appellant could not receive a fair trial, the potential for a presumption of prejudice is high. However, in the present case, we find nothing in the record which indicates a "community-wide rush to judgment" that has infected other trials which have been set aside for lack of an impartial jury. *Stafford*, at 1566; *Braun*, at 792–93. "Presumed prejudice is rarely invoked and only in extreme circumstances." *Stafford*, at 1567. Appellant has not met his burden of showing presumed prejudice.

Therefore, examining the totality of the circumstances for actual prejudice, we find nothing which suggests a circus atmosphere or lynch mob mentality. *Id.* at 1566. Any potentially prejudicial actions in the community at large did not cross the threshold into the courtroom and pervade the judicial proceedings. Most of the jurors who actually sat on Appellant's jury had heard of the case, either through the media or personnel conversations. Each was asked during voir dire whether he or she could put aside any preconceived notions or opinions and decide the case solely on the law and evidence presented during the trial. Each responded in the affirmative. No specific member of the jury panel has been challenged by Appellant, at trial or now on appeal, as unable to set aside preconceived notions. Our review of the record shows no individual sat on the jury who expressed opinions they could not set aside. Any potential juror who expressed reservations about their ability to be fair and impartial was either dismissed for cause or stricken by a peremptory challenge.

■ We have repeatedly held an accused is not entitled to a jury who knows nothing about the case. *Shultz*, 811 P.2d at 1330. Rather he is entitled only to jurors who can fairly and impartially decide his case based on the evidence presented at trial. *Id.* Here, there is no suggestion in the record the jurors decided Appellant's punishment on anything other than the evidence and law presented to them at trial. Therefore, we find the trial court's denial of a change of venue did not deny Appellant a fundamentally fair trial.

As for Appellant's motion to recuse the prosecutor, we find no abuse of the trial court's discretion in denying that motion. If Appellant believes the prosecutor's conduct was a violation of the Rules of Professional Conduct, his recourse is to file a complaint with the Oklahoma Bar Association. Accordingly, this assignment of error is denied.

In his sixth assignment of error, Appellant raises a series of arguments addressing the unconstitutionality of imposing the death sentence on himself and other persons under the age of eighteen. Specifically, he argues that 1) imposition of the death penalty in this case under the current statute as it applies to juveniles is arbitrary, vague and overbroad, it does not give the district courts constitutional sentencing authority, it is cruel and unusual punishment and it denies due process and equal protection; 2) the statutes under Title 43 and 21 O.S.1981, § 701.9 create an unconstitutional class of juveniles, they are arbitrary and capricious, and the penalty is excessive and disproportionate; 3)

the killing of Appellant, who was seventeen years old at the time of the crime, and other members of his class, is contrary to evolving standards of decency; and 4) the punishment of death in this case fails the proportionality analysis.

In Appellant's first two arguments, he refers to the "current statute herein as it applies to juveniles." His only listed statutory citations are "43 O.S.1507.19 and 21 O.S.1981, § 701.9A." Appellant's reference to title 43 is not a correct statutory cite. Section 1507.19 in title 10 [1] is the Youthful Offender Act. However, any challenges to the constitutionality of this Act are not properly before us at this time since Appellant was not sentenced under that Act. Indeed, the Act does not take effect until July 1996.

As for the constitutionality of 21 O.S.1991, § 701.9A, the numerous cases from this State upheld by the United States Supreme Court indicates our system of capital punishment meets constitutional standards. Appellant has failed to show how the statutory scheme allowing imposition of the death penalty on sixteen- and seventeen-year-olds who commit murder is unconstitutional. *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989) (rejecting an argument that imposition of the death penalty on individuals who were sixteen or seventeen years old when they committed murder constituted cruel or unusual punishment in violation of the Eighth Amendment).

Appellant's last two arguments were raised in his brief in his prior appeal. This Court fully addressed those issues in its opinion affirming the murder convictions. *Hain*, at 748–49. We are not persuaded by Appellant's repetition of argument and again deny relief for the reasons previously stated.

### JURY SELECTION ISSUES

In his third assignment of error, Appellant relies on the dissent in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) to argue the excusal of three prospective jurors who were opposed to the death penalty denied him the right to a jury composed of a fair cross-section of the com-

munity. Appellant asserts such a situation predisposes the jury to assess the death penalty. The State responds the trial court properly excused those jurors who expressly stated they could not follow the law relating to all the sentencing options available to the jury.

In *Witherspoon*, the Supreme Court held that only prospective jurors who expressed conscientious scruples against the death penalty, and who would automatically vote against the death penalty could be excused from the jury panel for cause. This was modified and clarified in *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) wherein the Supreme Court held the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. at 424, 105 S.Ct. at 852. Adopting the above standard, this Court has said a prospective juror is only required to be willing to consider all the penalties provided by law and that he or she not be irrevocably committed before the trial has begun. *Duvall v. State*, 825 P.2d 621, 630 (Okl.Cr. 1991), *cert. denied* 506 U.S. 878, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992).

In the present case, three out of the first twelve prospective jurors called expressly said they could not consider imposing the death penalty. Each of the three, Ms. Kincade, Ms. Nelson and Ms. Hanlon, said no case could be presented which would warrant the imposition of the death sentence. Their responses remained consistent upon further questioning by defense counsel and the court. We find the responses by these three prospective jurors show each was irrevocably committed to vote against the death penalty regardless of the law and that her views about capital punishment would have prevented or substantially impaired her performance as a juror in accordance with her instructions and oath. *See Romano v. State*, 847 P.2d 368, 377 (Okl.Cr.1993), *aff'd.* 512

---

**1.** Renumbered as 10 O.S.Supp.1994, § 7306–2.1, effective July 1, 1995.

U.S. ——, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Therefore, the trial court properly excused Ms. Kincade, Ms. Nelson and Ms. Hanlon from the jury panel.

Appellant's contention the excusal of these prospective jurors denied him a jury composed of a fair cross-section of the community is not supported by argument or reference to the record. Appellant does not allege nor does the record reflect those actually sitting on the jury panel were predisposed to impose the death penalty.

Appellant also alleges error in the trial court's failure to inquire of the jurors pursuant to Oklahoma Uniform Jury Instructions–Criminal (OUJI–CR) No. 104.9 as discussed in *Mayes v. State,* 887 P.2d 1288, 1297 (Okl. Cr.1994), *cert. denied* —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). In *Mayes,* we cited to *Duvall v. State,* 825 P.2d at 630 wherein we modified the last sentence of OUJI–CR 104.9 to read as follows:

> If selected as a juror, and you find that the law and evidence in this case warrants the recommendation of the death penalty, could you vote to recommend that penalty?

■ This modification was designed to direct the trial court's inquiries away from questions regarding whether consideration of the death penalty would violate the juror's conscience and toward questions regarding whether the juror could consider all alternatives of punishment. When a trial court has properly focused its inquiry on the prospective juror's ability to follow the law and consider all possible punishments, it is not necessary that the trial court's inquiry be verbatim OUJI–CR 104.9. Here, the trial court informed the potential jurors of the three possible punishments and asked if the juror had feelings about capital punishment which would prevent or substantially impair him or her from considering all possible punishments. We find no error in this inquiry. This assignment of error is denied.

In his fifth assignment of error, Appellant claims error in the trial court's denial of his motion for individual voir dire of potential jurors and his motion to sequester the jury before the case was submitted to it. In support of his motion for individual voir dire, Appellant argues that potential jurors would

be more likely to be candid in their responses if they were not before their peers and the press.

■ This Court has consistently held there is no right to individual voir dire. *Neill v. State,* 896 P.2d 537, 550 (Okl.Cr. 1994), *cert. denied* —— U.S. ——, 116 S.Ct. 791, 133 L.Ed.2d 740 (1996); *Tibbs v. State,* 819 P.2d 1372, 1379 (Okl.Cr.1991); *Douma v. State,* 749 P.2d 1163, 1165 (Okl.Cr.1988). Individual voir dire is a matter of discretion with the trial court. *Morrison v. State,* 619 P.2d 203, 210 (Okl.Cr.1980). In *Neill* we stated:

> [a]lthough such a practice may be allowed by a trial judge, it is an extraordinary measure ... Unless the danger of prejudicing the jurors by exposure to damaging information is a grave problem or some special purpose would be served, it is unlikely that individual voir dire would be justified. We find no abuse of discretion in not allowing the procedure.

896 P.2d at 550.

In the present case, individual voir dire was not warranted. While we can appreciate Appellant's argument regarding juror candidness, there is nothing in this Court's review of the record to indicate that the jurors were less than candid in their responses. Recognizing the difficulty this Court may have in conducting a review regarding a juror's willingness to be candid with a court, we place great weight on the trial court's opinion of the jurors. Here, the trial court, who saw the jurors and heard their responses firsthand, found no need to individually and privately voir dire the potential jurors. It does not appear Appellant was prejudiced by that decision. Accordingly, we find no abuse of discretion by the trial court in denying the motion for individual voir dire.

Appellant argues the combination of the publicity surrounding the trial and the denial of the motions for individual voir dire and change of venue warranted sequestration of the jury. Appellant relies on *Evans v. State,* 26 Okl.Cr. 9, 221 P. 794 (1924) and *Nowabbi v. State,* 31 Okl.Cr. 158, 237 P. 868 (1925) for the proposition that when a reasonable request has been made by either party for

sequestering the jury, particularly where there is a plethora of publicity, the request should not be refused.

Whether or not to sequester the jury is within the discretion of the trial court. *Neill,* 896 P.2d at 550, overruling on those grounds *Evans.* An abuse of discretion will be found only where Appellant shows, by clear and convincing evidence, the jurors were specifically exposed to media reports which were prejudicial to the appellant. *Price v. State,* 782 P.2d 143, 147–48 (Okl.Cr. 1989). In *Nowabbi,* this Court held the defendant has the burden of showing prejudice before this Court will find it reversible error to fail to sequester the jury. Here, Appellant has not shown, by clear and convincing evidence, that the failure to sequester the jury resulted in their exposure to any improper influences or that they were affected by any passions or prejudices existing outside the courtroom. Both the State and the defense conducted an extensive voir dire examination. Each juror sworn testified that he or she could be fair and impartial. Appellant has failed to meet his burden of showing that he was prejudiced in any way by the court's ruling. As we are unable to discern any purpose for sequestering the venire and as it does not appear that Appellant was prejudiced by not questioning the venire individually, this assignment of error is denied.

## EVIDENTIARY ISSUES

Appellant's argument in his seventh assignment of error is twofold. First, he challenges the use of unadjudicated crimes to support the aggravating circumstance of "continuing threat." Appellant asserts the introduction of such evidence violated his rights to equal protection and due process as it denied him the right of confrontation and a fair and impartial trial. Secondly, he argues his rights to equal protection and due process were violated by the trial court's grant of immunity for his testimony concerning the unadjudicated offenses.

At trial the State introduced evidence of prior unadjudicated offenses of burglary and rape by instrumentation committed by Appellant against a Ms. Comstock and a rape and sodomy committed by Appellant against a Ms. Hofford. Testifying in the State's case-in-chief, Ms. Comstock described how Appellant and co-defendant Lambert broke into her home, physically assaulted her and raped her with a frankfurter. She identified Appellant as one of her assailants. Ms. Hofford's testimony was introduced through a transcript of testimony she had given earlier. She testified as she walked to work early one morning, Appellant and Lambert forced her into their car where she was physically assaulted, raped and forced to sodomize Appellant. She identified Appellant as one of her assailants. Both offenses occurred in Kansas.

Prior to the introduction of this evidence, Appellant objected, arguing that such evidence forced him either to let the evidence go unanswered or give up his Fifth Amendment right to silence and respond to the evidence. The trial court ruled that if Appellant needed to respond to the evidence, he would be granted immunity from prosecution for the unadjudicated offenses.

During the defense case-in-chief, Appellant took the witness stand. He testified to his childhood, the 1987 robbery, kidnapping and attempted murder of Derek Wunsch and Heather Rogers (crimes for which Appellant pled guilty), and the circumstances surrounding the Houghton and Sanders murders. On cross-examination, the prosecution asked Appellant if he had committed a rape and burglary against Ms. Comstock. Appellant denied committing the offenses. There was not a timely objection to this first question. However, after Appellant's response, defense counsel objected on grounds the evidence was an unadjudicated offense, and Appellant was being forced to give up his Fifth Amendment right to silence. Counsel informed the court he was going to advise Appellant not to answer the question and not to answer any questions pertaining to the Comstock and Hofford matters. The trial court overruled the defense objection, granted Appellant immunity from prosecution in the Comstock and Hofford matters and directed Appellant to answer questions on those matters or be held in contempt of court. When asked about the rape and sodomy committed

against Ms. Hofford, Appellant denied commission of those offenses.

This Court has repeatedly upheld the admission of evidence of unadjudicated crimes in the sentencing stage of a capital case. *Allen v. State,* 67 OBJ 713, 717, —— P.2d ——, ——, 1996 WL 67516 (Okl.Cr. February 16, 1996); *Paxton v. State,* 867 P.2d 1309, 1323 (Okl.Cr.1993); *cert. denied* —— U.S. ——, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994); *Johnson v. State,* 731 P.2d 993, 1003 (Okl.Cr. 1987), *cert. denied* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). However, as we noted in *Roberts v. State,* 910 P.2d 1071, 1083 n. 7 (Okl.Cr.1996) this Court is aware that one federal district court has concluded use of unadjudicated crimes can result in a constitutional violation. *See Williamson v. Reynolds,* 904 F.Supp. 1529 (E.D.Okla.1995). We are aware the issue is not settled in the federal courts, and the United States Supreme Court has yet to specifically address the issue of using unadjudicated crimes to support the aggravating circumstance of "continuing threat". *See Williams v. Lynaugh,* 484 U.S. 935, 935–936, 108 S.Ct. 311, 312, 98 L.Ed.2d 270 (1987) *(Marshall, J., with whom Brennan, J. joins, dissenting from denial of certiorari).* However, the United States Supreme Court has generally approved the constitutionality of the "continuing threat" aggravator. *See Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 2951–52, 49 L.Ed.2d 929, 938 (1976). *See also Tuilaepa v. California,* 512 U.S. ——, ——, 114 S.Ct. 2630, 2637, 129 L.Ed.2d 750 (1994).

■■■■ Mindful of the lack of finality in this area of the law, this Court reaffirms its position that unadjudicated offenses may be introduced during the second stage of a capital trial to support the aggravating circumstance of "continuing threat". Prior adjudicated cases resulting in convictions for violent felony offenses support a separate aggravator, "prior violent felony". However, proof of the "continuing threat" aggravator is much more than prior convictions; it is the circumstances surrounding the murder for which the defendant has just been convicted and his prior criminal conduct. This is the primary evidence the State must prove to find the "continuing threat" aggra-

vator. Evidence of a defendant's criminal history is relevant to the jury's determination as to whether the defendant is likely to commit future acts of violence that would constitute a continuing threat to society. *Paxton,* at 1322. Having such evidence for consideration focuses the jury's sentencing determination on the particularized circumstances of the offense and the individual offender. *Id.* To find the use of unadjudicated offenses improper is a backdoor attempt to find the aggravator unconstitutional contrary to decisions by the United States Supreme Court. Denial of the evidence deprives the government of the ability to prove a constitutional aggravating circumstance. *See Roberts,* 910 P.2d at 1083 n. 7. Therefore, we find the evidence of the Comstock and Hofford matters properly admitted as unadjudicated offenses in support of the "continuing threat" aggravating circumstance.

■■■■ Turning to the second part of Appellant's argument, we find the trial court erred in granting Appellant immunity in exchange for his testimony concerning the unadjudicated offenses. *The trial court had no authority to grant Appellant immunity from the prosecution of offenses committed in the State of Kansas.* The legal authority of judges in the State of Oklahoma extends only to offenses committed in the State of Oklahoma. 20 O.S.1991, § 91.1. Criminal offenses committed in other states is beyond the purview of the Oklahoma state judicial system.

■■■■ *This erroneous grant of immunity* resulted in the admission of testimony in violation of the Fifth Amendment Self–Incrimination Clause. This error, albeit constitutional, is subject to a harmless error analysis as it was an error in the trial process itself, and not a defect affecting the entire framework of the trial. In *Frederick v. State,* 902 P.2d 1092, 1097 (Okl.Cr.1995), citing to *Arizona v. Fulminante,* 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302, 330 (1991) we explained:

.... [A] harmless error analysis may be applied to constitutional violations involving trial error which occurs during the presentation of the case to the jury because such error can be "quantitatively

assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." In contrast, errors which cannot be subject to harmless error analysis are those which exemplify "structural defects in the constitution of the trial mechanism." The Court reasoned that errors such as absence of counsel for a criminal defendant and an impartial judge affect the entire conduct of a trial from the beginning to the end. "Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (citations omitted)

■ When reviewing improperly admitted evidence, an appellate court simply reviews the remainder of the evidence against the defendant to determine whether the admission of the improperly admitted evidence was harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 332.

■ In the present case, evidence of the unadjudicated offenses, as testified to by Ms. Hofford and Ms. Comstock, was properly admitted. When asked about those unadjudicated offenses at trial, Appellant denied them. The jury had no more information before it in deciding the existence of the "continuing threat" aggravator than if Appellant had remained silent on the issue. In fact, Appellant's denial may have been more to his benefit since his silence could have invited negative inferences from the jury. Appellant's testimony on the unadjudicated offenses had little if any impact on the jury's consideration of the "continuing threat" aggravator. Therefore, we find admission of Appellant's testimony concerning the unadjudicated offenses harmless beyond a reasonable doubt. This assignment of error is denied.

Appellant contends in his eighth assignment of error he was denied a fair trial by the admission of certain photographs and the testimony concerning the injuries inflicted upon the victims' bodies. Specifically, he complains about the testimony of the medical examiner concerning the external burned condition of the bodies, and the descriptions of the scene by a Sapulpa city police officer and a Sapulpa firefighter who were among the first at the crime scene. Appellant also challenges the admission of State's exhibits Nos. 36, 37, 39, 41A and 41B.[2] Appellant argues that in light of testimony the victims died from smoke inhalation, testimony and photos concerning the burning and charring of the bodies was not relevant to any issue but was gruesome and prejudicial.

The admissibility of evidence in a resentencing trial is governed by 21 O.S.Supp.1993 § 701.10a(4). That section provides that all exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding; additional relevant evidence may be admitted including testimony of witnesses who testified at the previous trial. Here, testimony by the medical examiner concerning the injuries suffered by the victims, descriptions of the crime scene by the first law enforcement officials and rescue workers at the scene and photos of the crime scene were properly admitted as such evidence had been admitted in the previous trial.

■ Even if this evidence were not admitted in the previous trial, it is admissible in the resentencing as relevant to establishing the aggravating circumstances. The manner of killing, as evidenced by the circumstances surrounding the murder and the killer's attitude, is a relevant consideration in establishing the aggravating circumstance of "especially heinous, atrocious or cruel." *Williamson v. State*, 812 P.2d 384, 405 (Okl.Cr. 1991), *cert. denied* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *reversed on other grounds, Williamson v. Reynolds*, 904 F.Supp. 1529 (E.D.Okla.1995).

■ Here, Appellant was responsible for placing the victims in the trunk of a car and setting the car on fire. The cause of death

---

**2.** State's Exhibits No. 36 and 37 are not autopsy photographs as Appellant claims, but are autopsy reports. State's Exhibits Nos. 39 is a photograph of Sander's burned car, Nos. 41A and 41B show the victims' bodies in the trunk as first discovered by law enforcement.

was ruled to be a combination of thermal burns and smoke inhalation. That the victims mercifully succumbed to smoke inhalation prior to their bodies being charred does not detract from the fact Appellant intended the victims to die in the fire and they suffered prior to death. That the victim's bodies were burned and charred as a result of Appellant's conduct is relevant to show his utter indifference to the sufferings of the victims. Therefore testimony and photos of the burned bodies and the car were relevant evidence.

■■■ Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Smith v. State,* 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert denied,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); 12 O.S. 1981, § 2403. When the probative value of photographs is outweighed by their prejudicial impact on the jury—that is, the evidence tends to elicit an emotional rather than rational judgment by the jury—then they should not be admitted into evidence. *President v. State,* 602 P.2d 222, 225 (Okl.Cr.1979); *Oxendine v. State,* 335 P.2d 940, 942 (Okl.Cr. 1958). However, gruesome crimes result in gruesome photos. *McCormick v. State,* 845 P.2d 896, 898 (Okl.Cr.1993). The pictures admitted were graphic, as are most pictures of dead, murdered bodies; however, the pictures were not so repulsive as to be inadmissible. *Id.* at 898–99; *Thomas v. State,* 811 P.2d 1337, 1345 (Okl.Cr.1991), *cert. denied,* 502 U.S. 1041, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992). The probative value of the photographs was not outweighed by any prejudicial impact. Therefore, we find the photographs were properly admitted into evidence and this assignment of error is denied.

In his ninth assignment of error, Appellant complains that statements of co-defendant Lambert were improperly admitted. During his case-in-chief, Appellant took the witness stand. On cross-examination he was asked about statements he had made to the police confessing to his participation in the murders. The prosecution established that Appellant initially told police he had nothing to do with the murders. However, when told co-defendant Lambert had given a statement, Appellant changed his mind and told the police he was involved in the murders. The prosecutor asked Appellant what it was about Lambert's statement that made him change his mind and talk with the police. Appellant said it was because Lambert did not tell the truth. When asked what was not true about Lambert's statement, defense counsel objected arguing the answer called for inadmissible co-defendant statements. The objection was overruled and Appellant testified that Lambert lied about his participation in the murders and Appellant's participation, specifically misstating that Appellant had lighted the fire.

On appeal, Appellant relies on *Neill v. State,* 827 P.2d 884 (Okl.Cr.1992); *Lafevers v. State,* 819 P.2d 1362 (Okl.Cr.1991) and *Fontenot v. State,* 742 P.2d 31 (Okl.Cr.1987) to argue the admission of a non-testifying co-defendant's confession which inculpates the defendant on trial is error. Appellant's analysis is misplaced as this case is clearly distinguishable from the above cited cases.

■■ In *Neill, Lafevers* and *Fontenot,* the State sought to prove the defendant's guilt, in part, through the hearsay statements of non-testifying co-defendants. Those statements, which exculpated the non-testifying co-defendant and inculpated the defendant on trial, were admitted for the truth of the matters asserted. In the present case, any statements made by co-defendant Lambert were not admitted for the truth of the matter asserted, i.e. that Appellant lit the fire underneath the car. The statement was admitted to show why Appellant changed his mind and confessed his participation in the murders to the police. Testimony which is offered to show that a statement was made and not to prove its truth is not hearsay. *Washington v. State,* 568 P.2d 301, 309 (Okl.Cr.1977). Where the mere fact that a statement was made or a conversation was had is independently relevant, regardless of its truth or falsity, such evidence is admissible. *Woodruff v. State,* 846 P.2d 1124, 1139 (Okl.Cr. 1993); *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Lee v. State,* 700 P.2d 1017, 1021 (Okl.Cr.1985). The situation in this case is clearly different from

that in *Neill, Lafevers* and *Fontenot* and we find no error.

Appellant contends in his eleventh assignment of error that the victim impact statements were excessively prejudicial and appeals to passion which resulted in a verdict which constituted cruel and unusual punishment. Appellant directs our attention to three statements. Delma Houghton's statement she wished her son could have died a gentle death, as the family dog had experienced who was given a lethal injection, quivered a little and went to sleep; Williams Sanders' opinion death was the only appropriate punishment for Appellant and Tena Houghton's references to the unbearable pain of burning to death.

During the trial, after the victim impact statements were read to the jury, including the above comments, an in-camera hearing was held and Appellant lodged objections to the above comments. He argued the comments were excessively prejudicial, an improper reference to lethal injection being painless, not properly based on the evidence and relieved the jury of its sense of responsibility for sentencing. Appellant's objections were overruled.

 Title 22 O.S.Supp.1993, § 984 provides victim impact evidence should be limited to the "financial, emotional, psychological, and physical effects," or impact of the crime itself on the victim's survivors; as well as some personal characteristics of the victim. *Cargle v. State,* 909 P.2d 806 (Okl.Cr.1995). As long as these personal characteristics show how the loss of the victim will financially, emotionally, psychologically, or physically impact on those affected, it is relevant, as it gives the jury a "glimpse of the life" which the defendant "chose to extinguish". *Id* at 828 quoting *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). However, these personal characteristics should constitute a "quick" glimpse, and its use should be limited to showing how the

victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed. *Id.* At trial, objections to victim impact evidence are to be based upon its relevance to the guidelines set forth in § 984. Objections such as those made in the present case, while legitimate concerns, are not proper and do not provide sufficient ground to exclude any evidence.

Reviewing the challenged comments, we find only one improper. Section 984(1) defines victim impact statements and allows for the victim's opinion of a recommended sentence. We find this includes the opinion of a member of the victim's immediate family as defined in 22 O.S.Supp.1993, § 984(2) regarding a recommended sentence. Therefore, Mr. Sanders' opinion of the appropriateness of the death penalty was in accordance with the statutory provisions.[3]

 Section 984(1) also provides for information about the manner in which the crime was committed. Tena Houghton's statement was therefore relevant. However, Delma Houghton's comment was not relevant to the manner in which the crime was perpetrated, nor was it relevant to the financial, emotional, psychological, or physical impact of the crime on the victim's survivors. It was purely an emotional plea which is not statutorily permitted. The consequences of the improper admission of this statement is addressed in the Mandatory Sentence Review.

### INSTRUCTIONS

In his first assignment of error, Appellant contends the trial court's failure to give his requested jury instruction stating that the jury's findings regarding mitigating circumstances did not have to be unanimous violated his rights to a fair sentencing proceeding. This Court has repeatedly rejected this argument and we do so again. *Duckett v. State,* 919 P.2d 7 (Okl.Cr.1995); *LaFevers v. State,* 897 P.2d 292, 309–10 (Okl.Cr.1995), *cert. de-*

---

**3.** We note this evidence may not pass scrutiny by the United States Supreme Court. We refer trial courts to language in *Payne v. Tennessee,* 501 U.S. 808, 830, 111 S.Ct. 2597, 2611, 115 L.Ed.2d 720 (1991) that admission of a victim's family members' characterizations and opinions about the crime, the defendant and the appropriate sentence violate the Eighth Amendment. Any error in the admission of the evidence is harmless. See the Mandatory Sentence Review portion of the opinion.

*nied* —— U.S. ——, 116 S.Ct. 820, 133 L.Ed.2d 763 (1996); *Bryson v. State*, 876 P.2d 240 (Okl.Cr.1994); *cert. denied* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995); *Pickens v. State*, 850 P.2d 328, 339–340 (Okl. Cr.1993); *cert. denied* 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Stiles v. State*, 829 P.2d 984, 997 (Okl.Cr.1992); *cert. dismissed* —— U.S. ——, 116 S.Ct. 1257, 134 L.Ed.2d 206 (1996).

Appellant argues in his second assignment of error the trial court erred in failing to instruct the jury on the meaning of life without parole. Appellant relies on *Simmons v. South Carolina*, 512 U.S. ——, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) to argue an individual cannot be executed on the basis of information which he had no opportunity to deny or explain.

In *Simmons*, the jury was given two sentencing options—life imprisonment and death. Under South Carolina state law, the defendant's prior convictions rendered him ineligible for parole. The trial court refused the defendant's requested instructions defining a life sentence and setting forth his parole ineligibility. On appeal, the Supreme Court found in the absence of an instruction setting forth the defendant's parole ineligibility, the jury could have reasonably believed the defendant would be released on parole if he were not executed. The Court explained to the extent that misunderstanding pervaded the jury's deliberations, it had the effect of creating a false choice between sentencing the defendant to death and sentencing him to a limited period of incarceration. The Court found the failure to provide the jury with accurate information regarding the defendant's parole ineligibility, combined with the state's argument the defendant would pose a future danger if not executed denied the defendant due process.

◼ In the present case, the jury instruction setting forth the punishment option of life imprisonment without the possibility of parole gave the jury all the information they needed concerning that punishment option. Any further definition would only restate that the defendant would not be eligible for parole if the jury selected the sentence of life

imprisonment without the possibility of parole. To give a more detailed explanation would include reference to the governor's power to commute a sentence of life without parole, thereby potentially causing jurors to approach their decision with less appreciation for the gravity of their choice. *Mayes v. State*, 887 P.2d at 1316–17. Therefore, we find the instruction setting forth punishment of life without parole is sufficiently clear to enable any rational juror to understand it without explaining it further. This assignment of error is denied.

In his tenth assignment of error, Appellant argues the trial court erred in failing to give his requested jury instruction that the jury could not find an aggravating circumstance existed unless it first found the defendant made a material contribution to the aggravating circumstance. He argues that under *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) the failure to give such a cautionary instruction was error.

◼ The United States Supreme Court held in *Enmund* that a defendant cannot receive a sentence of death for murder committed by an accomplice unless the defendant knew the killing would take place, knew lethal force would be used, killed or attempted killing. This ruling was modified somewhat in *Tison* wherein the Supreme Court held that a defendant cannot be sentenced to death unless he was a major participant in the felony committed who displayed reckless indifference to human life implicit in knowingly engaging in criminal activities. Where the evidence warrants, this Court has held it is proper to instruct the jury on the law of *Enmund* to determine whether the defendant may be assessed the death penalty. *Allen v. State*, 874 P.2d 60, 64 (Okl.Cr.1994). Evidence warranting such an instruction is that which shows the defendant did not himself kill, did not know the killing would take place, or did not know lethal force would be used. *Id.* Such an instruction has not been required where the evidence showed the defendant killed or knew the killing would take place. *Stiles*, 829 P.2d at 991–992.

In the present case, the evidence clearly showed Appellant was a major participant in the felony committed who knew the killing would take place and who displayed reckless indifference to human life. The evidence showed that Appellant was aware Lambert wanted to burn the victims in the car when he stopped in the country road. Appellant helped start the fire by providing Lambert with the knife to cut the gas line; he gathered papers used to ignite the gasoline; and he retrieved the sleeping bag used to wick the gasoline under the car. Appellant testified at trial when Lambert initially said he was going to burn the car (with the victims in the trunk) Appellant told Lambert they should just leave the area and that he was not going to have anything to do with it. However, his conduct after that, in helping to ignite the car, clearly showed his participation in and knowledge the killings were to take place. Appellant created a desperate situation inherently dangerous to human life and contemplated that two lives would be taken during the arson of the car. No *Enmund/Tison* instruction was warranted, therefore the trial court did not err in failing to so instruct. *Powell v. State,* 906 P.2d 765, 776 (Okl.Cr.1995), *cert. denied* — U.S. ——, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996). Accordingly, this assignment of error is denied.

### AGGRAVATING CIRCUMSTANCES

In his final assignment of error, Appellant raises three arguments: the evidence was insufficient to support the aggravator of "especially heinous, atrocious or cruel"; the evidence was insufficient to support the aggravator of "great risk of death"; the evidence was insufficient to support the aggravator of "continuing threat"; and this Court should reweigh the mitigating and aggravating circumstances and sentence Appellant to life imprisonment or life imprisonment without the possibility of parole.

When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determina-

tion, this Court should view the evidence in the light most favorable to the State. *Romano v. State* 847 P.2d at 387. The standard for determining the existence of the aggravator "especially heinous, atrocious or cruel" was recently reiterated in *Cheney v. State,* 909 P.2d 74, 80 (Okl.Cr.1995), wherein we said:

> .... [T]his Court has limited this aggravating circumstance to cases in which the State proves beyond a reasonable doubt that the murder of the victim was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. "Absent evidence of conscious physical suffering of the victim prior to death, the required torture or serious physical abuse standard is not met." As to the extreme mental cruelty prong of this aggravating circumstance, "torture creating extreme mental distress must be the result of intentional acts by the defendant. The torture must produce mental anguish in addition to that which of necessity accompanies the underlying killing. Analysis must focus on the acts of the defendant toward the victim and the level of tension created." (citations omitted.)

Appellant argues the State failed to prove the existence of any conscious physical suffering or torture as expert testimony showed the victims died within a few minutes of smoke inhalation.

Dr. Merchant, the medical examiner, testified on direct examination that the cause of death was thermal burns and smoke inhalation. Autopsy findings indicated the victims were alive at the time the fire was set and that they died during the fire. The presence of thermal burns on the bodies was indicative of the existence of pain. On cross-examination, he said the predominant cause of death was smoke inhalation, however, some of the burns were antemortem. He stated he could not determine when the victims became unconscious, but once they were unconscious they would die rapidly, probably within five minutes. We find this evidence sufficiently indicative of serious physical abuse to support that prong of the aggrava-

tor. The victims did not die instantaneously, but after minutes of painful burns and desperate struggles for breath.

■ Other circumstances surrounding the killing support the mental cruelty prong of the aggravator. The evidence showed the victims were kidnapped and driven around before being bound with rope and put into the trunk of the car. Once they were inside the trunk, the fire was set. Dr. Merchant testified the victims were alive at the time of the fire. Appellant testified to hearing their screams as he watched the fire burn. We find the acts of Appellant, all clearly intentional, resulted in extreme mental torture to the victims. The victims were terrorized for a significant period of time before their deaths and the mental anguish suffered by the victims was far beyond that which necessarily accompanies a killing. *See Booker v. State*, 851 P.2d 544, 548 (Okl.Cr.1993). *See also Mann v. State*, 749 P.2d 1151, 1160 (Okl.Cr.), *cert. denied* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988). We find the evidence overwhelmingly supports the finding that the murders were "especially heinous, atrocious or cruel."

■ Appellant next challenges the evidence supporting the aggravator that he knowingly created a great risk of death to more than one person. The evidence shows that Appellant and co-defendant Lambert forced their way into the car occupied by the two victims. After driving around for a while, Appellant and Lambert exited the car with the victims. Michael Houghton was robbed of his wallet, his hands and feet were bound and he was forced into the trunk of the car. Laura Lee Sanders was kept in the main part of the car with Appellant and Lambert as they drove back to get Michael Houghton's pickup from the parking lot where the victims were first abducted. On the way, the defendants decided to put Sanders in the trunk. With both victims in the trunk, Appellant and Lambert drove around a while longer. The decision was then made to burn the car and the victims. By assisting Lambert in setting the fire which burned the car, Appellant deliberately murdered two people. We find the death of these two individuals supports the jury's finding that Appellant knowingly created a great risk of death to more than one person. *See Cargle*, 909 P.2d at 831–832.

■ To support the aggravator of continuing threat, the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future. *Malone v. State*, 876 P.2d 707, 717 (Okl.Cr.1994). In evaluating whether there is a probability that the defendant will commit acts of violence which will constitute a continuing threat to society, we have held that evidence of the callousness of the murder for which the defendant was convicted can be considered as supporting evidence. *Revilla v. State*, 877 P.2d 1143, 1155–1156 (Okl.Cr.1994), *cert. denied* — U.S. ——, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995). In determining the callousness of the crime, the defendant's attitude is critical to the determination of whether the defendant poses a continuing threat to society. *Snow v. State*, 876 P.2d 291, 298 (Okl.Cr.1994), cert. denied — U.S. ——, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995). "A defendant who does not appreciate the gravity of taking another's life is more likely to do so again." *Id.* This aggravating circumstance may also be proved by evidence of unadjudicated criminal acts. *Revilla*, 877 P.2d at 1156.

■ Appellant's own description of the killings shows the callousness with which they were committed. He testified that after he knew Lambert wanted to burn the car, he heard the victims kicking around inside the trunk. As Lambert prepared the fire, Appellant stood and watched. After the fire was started Appellant and Lambert left the area, only to return a short time later to see how the fire was burning.

Additionally, the State presented evidence showing that Appellant had committed at least three prior unadjudicated crimes: a rape and sodomy on Mary Hofford, a rape by instrumentation on Phyllis Comstock; and that he had forced his way into the home occupied by Philip Wunsch and Heather Rogers, threatened them with a firearm, abducted Rogers and beat her with a hammer. Additionally, the State presented evidence

showing Appellant had attempted to escape from jail when he was returned for retrial. In his pocket was a knife. This evidence of unadjudicated crimes and the callous nature in which the murders were committed support the aggravator of continuing threat.

 Appellant directs our attention to evidence presented by the defense that he had no propensity toward violence and at the time of the killings he was acting under the influence of his co-defendant. We note this evidence was contradicted by the State with evidence of other violent acts committed by Appellant and with evidence showing a propensity toward violence which would constitute a future threat to society. We have previously held that "society" as used in this aggravator can even apply to a prison population. *Braun*, 909 P.2d at 798. It is the attitude and actions of Appellant himself, not the number of people threatened, which determines whether he might commit future acts of violence and be a threat to society. *Id.* Despite Appellant's assertions to the contrary, sufficient evidence was presented to show Appellant has a propensity to violence which makes him a continuing threat to society.

Finally, Appellant asserts since these aggravating circumstances should not have been considered by the jury, this Court must reweigh the aggravating circumstances and mitigating evidence and modify his sentence to life imprisonment or life imprisonment without parole.

 If an aggravating circumstance is stricken by this Court in its appellate review, this Court has the authority to reweigh the remaining aggravating circumstances against the mitigating evidence to determine whether the death sentence is still valid. *Snow*, 876 P.2d at 299. The death sentence must be stricken unless the Court can determine beyond a reasonable doubt the jury would have imposed it absent the invalidated aggravating circumstance. *Id.*

In the present case, it is not necessary for this Court to conduct a reweighing analysis. We have determined the aggravating circumstances found by the jury are valid as each

was adequately supported by the evidence. This assignment of error is denied.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of the aggravating circumstances as enumerated in 21 O.S.1981, § 701.12. Turning to the second portion of this mandate, the jury found the existence of three (3) aggravating circumstances: 1) the defendant knowingly created a great risk of death to more than one person; 2) the murders were especially heinous, atrocious or cruel; and 3) the existence of a probability the defendant would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(2)(4)(7). As discussed previously, we have found each of the aggravators supported by sufficient evidence.

Mitigating evidence was presented by Appellant in the form of seven (7) witnesses, including Appellant's sister, his case manager at Oklahoma State Penitentiary, mental health professionals, and friends. Appellant also took the witness stand and testified in his own behalf. These witnesses testified to Appellant's youth; educational level and intellectual capacity; emotional, psychological and mental age; blameworthiness; the dominance of Appellant by co-defendant Lambert; drug history; the State's failure to provide appropriate treatment at an earlier stage of Appellant's development; Appellant's fear reaction to finding himself in a fugitive/captive situation; his lack of personal participation in the actual criminal acts; his attempt to physically absent himself from the crime scene so far as possible; the lack of any violence in the alleged escape attempt; Appellant's family history; his well-socialized adjustment to incarceration, his good behavior and lack of violence; his revulsion at Lambert's choice in the manner of the victim's death; and that he did not realize Lambert's intent to kill at the commencement of the Robbery/Kidnapping, and was unable to extricate himself afterwards. This

evidence was summarized into seventeen (17) factors and submitted to the jury for their consideration as mitigating evidence, as well as any other circumstances the jury might find existing or mitigating.

▇ Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1987, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Any improper victim impact evidence admitted was harmless beyond a reasonable doubt. There was sufficient evidence, independent of the victim impact evidence, to support the aggravating circumstances. Accordingly, finding no error warranting modification, the sentence of death for each murder is hereby **AFFIRMED**.

JOHNSON, P.J., and LANE and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., concurs in result.

CHAPEL, Vice Presiding Judge, concurring in result:

I agree the sentence of death in this case should be affirmed. However, as noted by the majority, the trial court erred in compelling Hain's testimony as to certain crimes he allegedly committed in Kansas. Clearly, an Oklahoma judge has no authority to grant Hain immunity from prosecution for crimes alleged to have occurred in Kansas. The admission of Hain's compelled testimony violated his Fifth Amendment rights.

This issue is subject to harmless error analysis.[1] Admission of a defendant's compelled testimony is an error within the trial process itself, occurring during the presentation of the case to the jury, and not a structural defect affecting the framework within which the trial proceeds or an error transcending the criminal process.[2] Before we can determine that a federal constitutional error is harmless, we must be able to declare it harmless beyond a reasonable doubt, and the State has the burden to show that the error did not contribute to the defendant's conviction or sentencing.[3] After a review of the record, I am unable to so determine.

The prosecutor asked Hain (1) whether he heard Ms. Comstock testify, (2) specifically whether he heard her testify to repellent details of the crime which the prosecutor related, and then (3) whether he denied doing those acts. The jury heard Hain claim his Fifth Amendment right not to testify (TRII 438–39, 444). Outside the jury's presence, the trial court granted Hain immunity over his objection and directed him to answer any questions put to him or be held in contempt (TRII 441).[4] When the jury returned, Hain was compelled to answer eight similar questions about Ms. Hofford's testimony, again repeating details of the rape and sodomy. Again he was asked whether he denied committing those acts. Each time Hain denied the accusations.

One might argue that any error in directing Hain's compelled testimony was harmless simply because Hain denied committing the offenses. This is unpersuasive. First, the prosecutor took the opportunity to repeat in detail the victims' testimony, asking merely whether Hain had heard each victim testify as to certain things. This method of questioning connected Hain with the details of the

---

1. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

2. *Fulminante,* 499 U.S. at 310–11, 111 S.Ct. at 1265, 113 L.Ed.2d at 331–32.

3. *Bartell v. State,* 881 P.2d 92, 95–100 (Okl.Cr. 1994); *Fulminante,* 499 U.S. at 301, 111 S.Ct. at 1260, 113 L.Ed.2d at 325–26 (error influenced capital sentencing); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

4. In addition to lack of jurisdiction, this grant was erroneous for another reason. The trial court's grant of immunity was explicitly limited to prosecution for the Kansas crimes; the record shows the immunity did not extend to the State's use of the crimes against Hain in these sentencing proceedings. Research has not discovered what type of limited "immunity" this might be.

rapes and other acts before the jury by sheer proximity alone. The jury heard Hain admit he had listened to that testimony and saw his reactions as it was repeated to him. Thus the jury heard more than Hain's denial; they also heard once again the details of the offenses. Second, before Hain denied committing the crimes the jury heard him attempt to claim his Fifth Amendment right to avoid answering those questions. That claim must have cast unavoidable doubt on Hain's subsequent denials. Third, this Court has held that a defendant presented direct evidence of a crime by testifying where (1) he took the stand, (2) presented an alibi defense, and (3) denied committing the crime.[5] By analogy, Hain's testimony denying the Kansas offenses must be considered incriminating. If a defendant presents direct evidence of a crime by denying he did it, how can that testimony not be incriminating as well?

Taken as a whole, the questions posed to Hain and his compelled answers tended to incriminate him and prejudiced him before the jury. It is true that Ms. Comstock and Ms. Hofford had already testified to the Kansas crimes, and each identified Hain as one of her attackers. Even in light of this evidence, I cannot say that admission of Hain's compelled testimony was harmless. I believe the violation of Hain's Fifth Amendment right against self-incrimination taints all the evidence presented regarding the Kansas offenses. Additional evidence was presented of adjudicated crimes committed earlier the same year against a Tulsa couple. Those crimes included burglary, robbery with fire-

arms, kidnapping, and two charges of attempt to kill. Although Hain's testimony about these offenses was not compelled, rather than risk upholding an aggravating circumstance based on otherwise tainted and unreliable evidence, I would invalidate that circumstance.[6]

Having invalidated the continuing threat aggravating circumstance, I would reweigh the evidence supporting the remaining aggravating circumstances and the evidence presented in mitigation.[7] Evidence supporting the aggravating circumstance that the murders were especially heinous, atrocious or cruel includes: 1) Hain threatened the victims with a knife; 2) Hain watched as Lambert tied Houghton's hands and feet, and put him in the trunk of Sanders's car; 3) Hain and Lambert kidnapped Sanders and Houghton; 4) Hain watched as Lambert put Sanders in the car trunk; 5) Hain drove Sanders's car and followed Lambert to a convenience store and then an isolated rural area; 6) Hain transferred the defendants' belongings from Sanders' car to Houghton's truck; 7) Hain watched while Lambert used Hain's knife to cut the car's fuel line; 8) Hain gave Lambert pieces of paper and a blanket with which Lambert set fire to the car; 9) Hain stood by the car and listened to Houghton and Sanders as the car burned; 10) the victims died of thermal burns and smoke inhalation, were alive during the fire, and would have been in pain before death. Evidence supporting the circumstance that the murders created a great risk of death to

---

5. *Mayes v. State*, 887 P.2d 1288, 1302–06 (Okl. Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995).

6. In addition, I have consistently disagreed with the use of unadjudicated offenses to support the continuing threat aggravating circumstance. *See, e.g., Cannon v. State*, 904 P.2d 89, 106 n. 59 (Okl.Cr.1995); *LaFevers v. State*, 897 P.2d 292, 308 n. 40 (Okl.Cr.1995); *Medlock v. State*, 887 P.2d 1333, 1349 n. 43 (Okl.Cr.1994); *Hogan v. State*, 877 P.2d 1157, 1167 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995); *Paxton v. State*, 867 P.2d 1309, 1332 (Chapel, J., dissenting); *see also Rogers v. State*, 890 P.2d 959, 976 n. 35 (Okl.Cr. 1995) (citing my dissents on this issue). The

federal district court for the Eastern District of Oklahoma has recently found admission of unadjudicated acts to support the continuing threat aggravating circumstance violates due process and injects arbitrariness into capital sentencing proceedings. *Williamson v. Reynolds*, 904 F.Supp. 1529 (E.D.Okla.1995). The fact that the evidence of unadjudicated offenses here is tainted by Hain's compelled testimony only strengthens my determination that the evidence supporting this circumstance is unreliable.

7. *McGregor v. State*, 885 P.2d 1366, 1385 (Okl.Cr. 1994); *Clemons v. Mississippi*, 494 U.S. 738, 752–54, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990).

more than one person includes the fact that two people were killed.[8]

Mitigating evidence presented includes: 1) good conduct while imprisoned; 2) poor home life, including alcoholic, absent, abusive, argumentative parents, frequent childhood moves; 3) introduced to drug and alcohol use by his father; 4) trouble staying in school, nonviolent juvenile delinquency, including burglary encouraged by his father, and escapes from juvenile detention; 5) Hain was under the influence of drugs at the time of the crimes; 6) Lambert planned the crimes and Hain was afraid of Lambert; 7) Lambert suffered psychological and developmental problems as a result of his childhood environment.[9]

After thoroughly considering all the mitigating evidence and the evidence supporting the remaining aggravating circumstances, I conclude that the evidence in aggravation outweighs the mitigating evidence presented. I further conclude that the jury could have imposed the death penalty based on the valid aggravating circumstances without considering the evidence presented in support of the continuing threat circumstance, and that the invalid evidence was not so overwhelming as to dominate the proceedings. Given the substantial evidence supporting the valid aggravating circumstance, it is clear that the jury's improper consideration of the invalid circumstance did not play a significant role in its decision to impose the death penalty. Consequently, I concur in the decision to affirm Hain's sentence.

---

8. *Allen v. State,* 67 O.B.J. 713, — P.2d —, 1996 WL 67516 (Okl.Cr. February 16, 1996); *Valdez v. State,* 900 P.2d 363 (Okl.Cr.), *cert. denied,* — U.S. —, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995).

9. Instruction 16, O.R. 182–83, listed as mitigating circumstances Hain's: 1) youth; 2) emotional, psychological and mental age; 3) blameworthiness; 4) dominance by Lambert; 5) drug history; 6) State's failure to provide appropriate treatment at earlier stages of development; 7) fear reaction to finding himself in a fugitive/captive situation; 8) lack of personal participation in criminal acts and proportionality analysis; 9) physically absenting himself from scene as far as possible; 10) lack of violence in alleged escape attempt; 11) education level; 12) family history; 13) intellectual capacity; 14) good adjustment to incarceration, good behavior with lack of violence, and expressive development; 15) revulsion at Lambert's choice of manner of victims' death; 16) Hain did not realize Lambert's intent to kill at beginning of the crimes and was unable to extricate himself.