F I L E D
United States Court of Appeals
Tenth Circuit

FEB 20 2002

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

SCOTT ALLEN HAIN,

Petitioner-Appellant,

v.

GARY E. GIBSON, Warden,

Respondent-Appellee.

No. 01-5014

Appeal from United States District Court
for the Northern District of Oklahoma
(D.C. No. 98-CV-331-BU)

Steven Michael Presson (Robert W. Jackson with him on the brief), Jackson & Presson,
P.C., Norman, Oklahoma, for the appellant.

Robert L. Whittaker, Assistant Attorney General (W.A. Drew Edmondson, Attorney
General of Oklahoma, with him on the brief), Oklahoma City, Oklahoma, for the
appellee.

Before **BRISCOE**, **LUCERO**, and **MURPHY**, Circuit Judges.

**BRISCOE**, Circuit Judge

Petitioner Scott Allen Hain, an Oklahoma state prisoner sentenced to death for two

counts of first degree murder, appeals the district court's denial of his 28 U.S.C. § 2254

petition for writ of habeas corpus.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291

and affirm.

## I.

The following is a summary of the facts as set forth by the Oklahoma Court of

Criminal Appeals (OCCA) in disposing of Hain's initial direct appeal:

> During the early morning hours of October 6, 1987, Laura Lee
> Sanders and Michael Houghton were seated in Sanders' car outside a Tulsa
> bar when they were approached by two men, later determined to be Scott
> Allen Hain and Robert Wayne Lambert.  Hain and Lambert were in the
> parking lot, waiting to rob a nearby house when they saw Sanders and
> Houghton talking in the car.  Appellant and Lambert forced their way into
> the car by threatening Houghton with a knife.
>
> Hain drove the car away from the bar, then stopped and robbed
> Houghton at gunpoint.  When Houghton resisted the robbery, Appellant
> forced him into the trunk of the car.  A short while later, Appellant and
> Lambert stopped and put Sanders in the trunk as well.
>
> After robbing Houghton and getting the keys to his truck, the two
> men decided to go back to the bar where the incident began and take
> Houghton's truck as well as Sanders car.  Lambert drove the truck away
> from Tulsa toward Sand Springs.  He stopped after driving down a rural
> Creek County roadway.  Appellant followed in Sanders' car with Sanders
> and Houghton in the trunk.
>
> The two men took Sanders' things, including some clothes, out of
> her car and put them in the truck.  One of them cut the gas line to the car
> and set it on fire by putting lighted newspaper and a blanket under the
> dripping fuel line.  Houghton and Sanders were banging on the trunk and
> yelling.  Appellant and Lambert left the area, however, returned a short time
> later to see if the fire was burning well.
>
> The two men stopped at a friend's house in Jennings and left a bag
> of things belonging to the victims in the garage.  They traveled to Wichita,
> Kansas in Houghton's truck.  After spending the five hundred and sixty-five
> ($565.00) dollars which they got from Houghton and Sanders, the two
> returned to Tulsa, where they were apprehended on the evening of October
> 9, 1987.

Hain v. State, 852 P.2d 744, 746-47 (Okla. Crim. App. 1993) (Hain I).

On October 13, 1987, Hain was charged by complaint and information in the District Court of Creek County, Oklahoma, with two counts of first degree murder, two counts of kidnapping, two counts of robbery with firearms, one count of arson in the third degree, and two counts of larceny of an automobile. The State subsequently filed a bill of particulars alleging the existence of three aggravating factors: (1) that Hain knowingly created a great risk of death to more than one person; (2) that the murders were especially heinous, atrocious or cruel; and (3) the existence of a probability that Hain would commit criminal acts of violence that would constitute a continuing threat to society.

The case proceeded to trial in May 1988. At the conclusion of the first-stage proceedings, the jury found Hain guilty as charged. At the conclusion of the second-stage proceedings, the jury, having found the existence of all three aggravating factors alleged by the prosecution, sentenced Hain to death on both of the first degree murder counts. The jury also sentenced Hain to ten years on each kidnapping count, one hundred years on each robbery with firearms count, twenty years on each larceny of an automobile count, and fifteen years on the third degree arson count.

On direct appeal, the OCCA affirmed Hain's convictions for murder, kidnapping, larceny of an automobile, and third degree arson. Hain I, 852 P.2d at 753. Because of the possibility that the jury convicted Hain under a theory of felony murder, the OCCA reversed on double jeopardy grounds Hain's convictions for robbery with firearms. Id. at

3

752. Lastly, because the trial court failed to instruct the jury with respect to the potential punishment alternative of life without parole, the OCCA vacated Hain's death sentences and remanded for new sentencing proceedings. Id. at 753.

The resentencing proceedings commenced on September 22, 1994. The prosecution alleged the existence of the same three aggravating factors alleged in the original second stage proceedings, i.e., that Hain knowingly created a great risk of death to more than one person, that the murders were especially heinous, atrocious or cruel, and the existence of a probability that Hain would commit criminal acts of violence that would constitute a continuing threat to society. To establish the first two factors, the prosecution presented evidence outlining the nature of the murders. To support the third factor, the prosecution presented evidence indicating that Hain and his co-defendant Lambert had engaged in three violent crimes in the months leading up to the murders (the assault and rape of a woman in her rural Kansas home, the kidnapping and rape of a Wichita woman, and the robbery and attempted murder of a Tulsa couple, which included the kidnapping and rape of the woman). In addition, the prosecution presented expert psychiatric testimony indicating that Hain's personality and psychological make-up made him prone to violence. Lastly, the prosecution presented evidence indicating that Hain had escaped from his jail cell while awaiting resentencing.

Hain attempted to counter the prosecution's evidence by presenting expert testimony from two psychologists and a social worker, all of whom opined that Hain was

4

not prone to violence. In addition, Hain alleged and attempted to prove the following mitigating circumstances: (1) his youth at the time of the crime; (2) his emotional, psychological and mental age; (3) his blameworthiness; (4) the fact that he was dominated by Lambert, his co-defendant; (5) his history of drug usage; (6) the State of Oklahoma's failure to provide appropriate treatment at earlier stages of his development; (7) a "[f]ear reaction to finding himself in a fugitive/captive situation"; (8) the lack of personal participation in the actual criminal acts (in comparison to the alleged participation of his co-defendant); (9) his attempts to physically absent himself from the scene of the crime as much as possible; (10) the lack of violence involved in his alleged escape attempt from jail; (11) his attained educational level; and (12) his family history. State Record, Vol. 2 at 182 (resentencing proposed instr. No. 16). At the conclusion of the resentencing proceedings, the jury found, with respect to both murder counts, the existence of all three aggravating factors alleged by the prosecution and Hain was sentenced to death on both counts.

Following his resentencing, Hain again filed a direct appeal with the OCCA. The OCCA affirmed Hain's death sentences. Hain v. State, 919 P.2d 1130 (Okla. Crim. App. 1996) (Hain II). Hain filed a petition for writ of certiorari which was denied by the Supreme Court. Hain v. Oklahoma, 519 U.S. 1031 (1996). Hain filed an application for post-conviction relief and the OCCA denied relief on May 1, 1998. Hain v. State, 962 P.2d 649 (Okla. Crim. App. 1998) (Hain III).

5

On July 30, 1998, Hain filed a petition for writ of habeas corpus asserting fourteen grounds for relief, and the district court subsequently authorized Hain's counsel to add an additional claim to the petition. The district court denied Hain's petition on December 18, 2000. The district court granted Hain a certificate of appealability (COA) with respect to three of the issues raised in his habeas petition: (1) the propriety of the trial court's decision to instruct on alternative theories of malice aforethought and felony murder; (2) ineffective assistance of counsel; and (3) whether the International Covenant on Civil and Political Rights prohibited the execution of juveniles. This court granted a COA on two additional issues: whether the trial court erred in admitting victim impact testimony and whether the trial court violated Hain's right against self-incrimination by ordering him to answer the prosecutor's questions about unadjudicated crimes that occurred in the State of Kansas.

## II.

Because Hain's federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), it is governed by the provisions of the AEDPA. Wallace v. Ward, 191 F.3d 1235, 1240 (10th Cir. 1999), cert. denied, 530 U.S. 1216 (2000). Under the AEDPA, the appropriate standard of review for a particular claim is dictated by the treatment of that claim by the state courts. If a claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), we may exercise our independent judgment in deciding the claim. See LaFevers

6

v. Gibson, 182 F.3d 705, 711 (10th Cir. 1999). In doing so, we review the federal district court's conclusions of law de novo and its findings of fact, if any, for clear error. Id. If a claim was adjudicated on its merits by the state courts, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). "Thus, we may grant the writ if we find the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case." Van Woudenberg v. Gibson, 211 F.3d 560, 566 (10th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)), cert. denied, 531 U.S. 1161 (2001).

III.

*Felony murder instructions*

Hain contends his due process rights were violated during the first-stage proceedings because, even though he was charged with malice aforethought murder, the trial court instructed the jury on alternative theories of malice aforethought and felony murder. Hain argues that the trial court's actions resulted in a constructive amendment of the complaint and information and deprived him of fair notice and an opportunity to

7

defend against the charges of felony murder.

As noted by Hain, the complaint and information charged him, in pertinent part, with two counts of first degree malice aforethought murder.[1]  The complaint and information did not specifically allege or otherwise mention first degree felony murder, but did allege other crimes, including kidnapping and armed robbery.  During the first stage proceedings, the district court proposed instructing the jury on alternative theories of first degree malice aforethought murder and first degree felony murder.  Defense counsel objected, arguing the State should be required to elect one theory or the other. The prosecution argued that the court should instruct on any theory of the law that was applicable to the evidence presented at trial.  Defense counsel argued, in response, that the killings were not an anticipated end to the robbery, and thus the theory of felony murder was inapplicable.  The trial court overruled defense counsel's objections and

---

[1]  Count One, for example, charged as follows:
> That the said defendants in the County and State aforesaid, on the day and year aforesaid, while acting in concert each with the other, with malice aforethought, did then and there wilfully, unlawfully and feloniously, without authority of law, effect the death of LAURA LEE SANDERS, by means of burning, to-wit: by placing the victim in the trunk of a vehicle and by means of a flammable substance setting fire to the said vehicle, then and thereby inflicting mortal wounds in the body of said LAURA LEE SANDERS, from which mortal wounds the same LAURA LEE SANDERS did languish and die.

State Record, Doc. 1.

instructed the jury on both theories.[2]  Because the trial court used only general verdict

forms, it is unclear which theory the jury ultimately relied on in finding Hain guilty of the

two murder counts.

Hain first asserted the argument now raised in his application for post-conviction

relief.[3]  The OCCA concluded the argument was waived due to Hain's failure to assert it

on direct appeal.  Hain III, 962 P.2d at 651-52.  The OCCA also rejected Hain's argument

that appellate counsel was ineffective for failing to raise the issue on direct appeal.  Id. at

653.

Hain does not contest the fact that the OCCA's procedural bar ruling rests on an

independent and adequate state procedural ground.  See Hale v. Gibson, 227 F.3d 1298,

1328 (10th Cir. 2000) (holding that Oklahoma's procedural bar rule, applicable to most

---

[2]  For example, Instruction Number 10 stated:
> You are instructed that the statutes of the State of Oklahoma
> provide in pertinent part:
>   A.  A person commits murder in the first degree when he
> unlawfully and with malice aforethought causes the death of another
> human being.
>   B.  A person also commits the crime of murder in the first degree
> when he takes the life of a human being, regardless of malice, in the
> commission of robbery with a dangerous weapon or in the
> commission of kidnapping.

State trial record at 557.  Other instructions set forth the specific elements of each theory.

[3]  In his initial direct appeal, Hain argued that "error occurred when the jury was
not required to specify whether the guilty verdict was based on malice aforethought
murder or felony murder."  Hain I, 852 P.2d at 752.  The OCCA rejected that argument,
concluding "[t]he verdict was proper" and "there [wa]s no error with regard to the murder
conviction."  Id.

claims not raised on direct appeal, is independent and adequate default rule), cert. denied, 121 S. Ct. 2608 (2001). Instead, he attempts to establish cause and prejudice excusing the procedural default by arguing that his appellate counsel was ineffective for failing to assert the issue on direct appeal. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (holding constitutionally ineffective assistance can establish cause excusing procedural default).

Hain's claim of ineffective assistance is governed by the familiar two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under that test, Hain must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. Id. at 688, 694; see also Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). More specifically, in the context of this appeal, Hain must establish that appellate counsel was "objectively unreasonable" in failing to assert the claim on direct appeal, and that there is a reasonable probability that, but for counsel's failure to raise the issue, Hain would have prevailed in challenging his murder convictions on direct appeal. See Neill v. Gibson, 278 F.3d 1044, 2001 WL 1584819 at *8 (10th Cir. 2001). In order to properly address these issues, we must "'look to the merits of the omitted issue.'" Id. (quoting Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999)).

Before turning to the merits of the omitted issue, we note that our resolution of

10

Hain's ineffective assistance claim is circumscribed by the OCCA's own resolution of that claim. As previously noted, Hain asserted the identical ineffective assistance claim in his application for post-conviction relief, and the OCCA resolved it against him on the grounds that appellate counsel's performance was not deficient. Hain III, 962 P.2d at 653. Under the AEDPA standards of review, we are bound by that determination unless we conclude the OCCA unreasonably applied Strickland in reaching this determination. See 28 U.S.C. § 2254(d)(1).

Hain bases his substantive argument on the Supreme Court's statement in Jackson v. Virginia, 443 U.S. 307, 314 (1979), "that a conviction upon a charge not made . . . constitutes a denial of due process." This principle in turn rests on the "broader premise" that "a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." Id.; see Stirone v. United States, 361 U.S. 212, 217 (1960) (noting that a "court cannot permit a defendant to be tried on charges that are not made in the indictment against him"); Cole v. Arkansas, 333 U.S. 196, 201 (1948) (holding "that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal"); Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999) ("A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him."); Hunter v. State of New Mexico, 916 F.2d

11

595, 599 (10th Cir. 1990) (noting that the "specific inquiry" in deciding whether a constructive amendment of the indictment has occurred "is whether the jury was permitted to convict the defendant upon a set of facts distinctly different from that set forth in the indictment") (internal quotation omitted). To determine whether a state habeas petitioner has been convicted of a crime not set forth in the charging instrument, courts look to the law of the state where the petitioner was convicted. See Jones v. Smith, 231 F.3d 1227, 1233 (9th Cir. 2001) (noting that the "difference between a constructive amendment and a mere variance . . . hinge[s] on whether the crime specified in the indictment/information and the crime for which the defendant was convicted are separate offenses under state law"); Jenkins v. Nelson, 157 F.3d 485, 498-99 (7th Cir. 1998); Cokeley v. Lockhart, 951 F.2d 916, 919 (8th Cir. 1991).

Oklahoma statutes have long defined the offense of "murder"[4] or "first degree murder" as encompassing both malice aforethought murder and felony murder. E.g., Tucker v. State, 92 P.2d 595, 597 (Okla. Crim. App. 1939) (outlining the provisions of the 1931 version of the Oklahoma murder statute). Consistent therewith, the OCCA has characterized malice aforethought murder and felony murder as different theories for the

---

[4] The 1931 version (as well as earlier versions) of the Oklahoma murder statute did not distinguish between degrees of murder. Instead, malice aforethought, felony murder, and what would now be characterized as second degree murder all fell within the single offense of "murder." This was consistent with the common-law crime of murder. See Schad v. Arizona, 501 U.S. 624, 648 (1991) (Scalia, J., concurring).

12

same general offense of first degree murder,[5] and has held that a defendant charged with malice aforethought murder can be convicted at trial of felony murder if the evidence supports such a conviction.  E.g., Wilson v. State, 983 P.2d 448, 463 (Okla. Crim. App. 1998) (referring to different "theories" of first degree murder); Munson v. State, 758 P.2d 324, 332 (Okla. Crim. App. 1988) (noting long-standing Oklahoma law that "where an information charges first degree malice aforethought murder, a conviction may be had for felony-murder if supported by the evidence"); Evinger v. State, 45 P.2d 552, 559 (Okla. Crim. App. 1935) (noting that where an information charges first degree malice aforethought murder, a conviction may be had, if warranted by the evidence, under the other subdivisions of the first degree murder statute); Ware v. State, 288 P. 374, 383 (Okla. Crim. App. 1930) (noting "the accused may be charged with the crime of murder alleged to have been committed with premeditated design to effect death under the first subdivision of the [1931 murder] statute, and a conviction had under the proof of killing, in the commission of a felony as proved under the third subdivision of the statute"); see also Easley v. State, 143 P.2d 166, 167 (Okla. Crim. App. 1943) (noting "[t]hat when an information for murder charges that the homicide was unlawfully committed with a

_____

    [5]  This view appears to be consistent with that embraced by at least a plurality of the Supreme Court. See Schad, 501 U.S. at 649 (Scalia, J., concurring) (noting that "most States [now] have a single crime of first-degree murder that can be committed by killing in the course of a robbery as well as premeditated killing" and rejecting the notion that "the Due Process Clause of the Fourteenth Amendment requires the subdivision of that crime into (at least) premeditated murder and felony murder").

13

premeditated design to effect the death of the deceased, it includes every character and degree of unlawful homicide").

In light of this authority, we conclude the information filed against Hain reasonably placed him on notice that he could be convicted at trial of first degree felony murder. As noted, the information alleged that he and co-defendant Lambert effected the death of the two victims by placing them in the trunk of a vehicle and setting fire to the vehicle. The information further alleged that Hain and Lambert committed seven additional felonies, all of which occurred on the same date and were part of a common scheme. Under Oklahoma law, we believe these allegations were sufficient to reasonably place Hain on notice that he could be convicted at trial under alternative theories of malice aforethought or felony murder.

Several additional factors bolster our conclusion that Hain's due process rights were not violated. First, after examining the trial transcript, we note that the evidence presented by the prosecution at trial was entirely consistent with the set of facts alleged in the information. In other words, it is clear from the record that Hain's murder convictions were not "based on an entirely separate uncharged set of facts." Jenkins, 157 F.3d at 498. Second, Hain's trial counsel did not argue lack of notice or prejudice at the time the trial court proposed instructing the jury on the theory of felony murder, nor is there any indication in the trial transcript that trial counsel attempted to defend Hain under the assumption that felony murder would not be at issue. Indeed, we note that trial counsel

14

relied primarily on an insanity defense,[6] which, under Oklahoma law, is applicable to both malice aforethought and felony murder. See Ullery v. State, 988 P.2d 332, 351 (Okla. Crim. App. 1999). Third, our review of the record leads us to conclude the evidence presented at trial was more than sufficient to support Hain's convictions under either theory of first degree murder.

Although Hain attempts to draw support from the OCCA's resolution of his co-defendant's direct appeal, we conclude the two cases are not, as Hain suggests, identical. Hain's co-defendant was tried separately before the same trial judge. As in Hain's trial, the trial court instructed the jury on alternate theories of malice aforethought murder and felony murder, even though the complaint and information charged Lambert only with malice aforethought murder. Lambert was found guilty of the murder charges but, as with defendant Hain, the use of general verdict forms prevented a determination of the specific theory relied on by the jury in reaching its verdicts. On direct appeal, the OCCA reversed Lambert's murder convictions. Lambert v. State, 888 P.2d 494, 504 (Okla.

---

[6] During the first-stage proceedings, Hain's trial counsel presented testimony from a clinical psychologist who opined that Hain, due to his emotional problems and personality make-up, "was very likely not conscious of any potential consequences of his behavior or actions" during the crime, Tr. at 734, and could "be seen as not understanding the nature nor the consequences of any acts or acts of omission." Id. at 736. During first-stage closing arguments, Hain's trial counsel addressed both theories of first degree murder, arguing that Hain did not intend to kill anybody and that the deaths of the victims were not the approximate or expected result of the other charged felonies. Id. at 919, 921. Ultimately, however, Hain's trial counsel asked the jury to find Hain not guilty by reason of insanity. Id. at 930.

Crim. App. 1994). In doing so, the OCCA concluded that Lambert was prejudiced by the failure to charge felony murder in the information because he had testified at trial that he committed the robbery and kidnapping but never intended to kill anyone and that he objected when Hain allegedly set fire to the vehicle. More specifically, the OCCA agreed with Lambert that he had demonstrated prejudice resulting from the failure to specify felony murder in the information, in that "he would never have willingly admitted to the jury that he committed a crime which would have resulted in his receiving the death penalty."[7] Id.

Notably, in reversing Lambert's murder convictions, the OCCA specifically stated that Hain was not entitled to relief on the same issue:

> We find it necessary to clarify that the same problem did not arise in the case of [Lambert's] co-defendant, Scott Allen Hain, F-88-466. Mr. Hain did not testify at trial, and is therefore unable to show any prejudice from the failure to charge felony murder in the information, as is present in [Lambert's] case.

Id. at 504 n.1.

For these reasons, we believe the OCCA reasonably applied Strickland in concluding Hain's appellate counsel did not perform deficiently by failing to raise the

---

[7] In Lambert, the OCCA stated, in part, that the trial "court instructed on a crime [felony murder] not charged in the information." 888 P.2d at 503. This statement appears to be clearly inconsistent with the Oklahoma criminal statutes and the pre- and post-Lambert authority outlined above. In any event, it appears clear that the controlling factor in Lambert was that Lambert demonstrated, to the OCCA's satisfaction, that the information misled him in the presentation of his defense.

16

issue on direct appeal. Not only does the record fail to establish a violation of Hain's due process rights, we are confident the OCCA would not have granted relief on the issue had it been raised by Hain's appellate counsel. Thus, we in turn conclude that Hain cannot establish cause and prejudice sufficient to overcome the OCCA's procedural bar ruling on the merits of his substantive due process claim.

*Admission of victim impact testimony*

Hain contends the admission of victim impact testimony during the resentencing proceedings "was so far out of permissible constitutional bounds . . . as to deprive him of a fair sentencing hearing and due process of law." Hain's Opening Br. at 33. To properly address Hain's contention, we begin by reviewing the relevant events that transpired during the sentencing proceedings.

Prior to trial, five of the victims' family members prepared written victim impact statements. Those statements were reviewed and redacted in part by the prosecution and the trial court. During the resentencing proceedings, the prosecution, over the objection of defense counsel, presented each of the five family members and had them read their redacted statements to the jury.

William Sanders, the brother of victim Laura Lee Sanders, testified in pertinent part:

> The extremely violent nature of this crime and the total lack of respect for human life have shocked – shocked me. Absolutely everyone is

brought up knowing the difference between right and wrong, and murder is wrong. Once a crime of this magnitude has been com – committed, a person must expect to be punished to the fullest – full extent of the law. Life, life without [parole], and death; these are the choices? All I can say for sure is that I know my sister was not given a choice between life or death. It has been seven years since my sister was murdered, and I'm still looking forward to the time when I can remember who she was and not the horrific images portrayed of her during these – during the various court proceedings.

The guilt has been established, and I feel strongly that the punishment should reflect the severity of the crime.

Vol. I of Resentencing Proceedings (9/26/94) at 211-12. Carol Lee Sanders, Laura Lee

Sanders' mother, testified in pertinent part:

It is very difficult for me to find words to express the horror, anger and disbelief that we felt and still feel, knowing that Laura Lee was put in the trunk of a car and burned alive while the ones who lit the fire listened to their screams for help, and yet only made sure that the car was burning good before they left. Add to that the fact that Laura Lee and Mike had done nothing to deserve this and had no idea who the people were that took it upon themselves to murder them. It is hard for us to imagine that anyone could have that much hate and meanness in them. These things make it even more difficult for us to accept her death.

In the past seven years, we have been trying to deal with not only the loss of Laura Lee, but also with the heinous manner in which she was murdered. We know how very scared she must have been from the time she was kidnapped and put in the trunk of her car. It hurts every time I think of the horror that she must have felt during her last minutes on this earth with the smell of gasoline, followed by the smoke, and then the heat of the flames, and having no way to escape. Every time I see a picture of a burning car on television or in a movie, it feels like someone has just kicked me in the stomach.

Several months ago, I had to have both of our dogs put to sleep. As I held them while the doctor gave them a shot, I saw them die very peacefully in my arms. I couldn't help but think of Laura Lee and Mike again and wish that they had been able to die that peacefully.
* * *
In order for true justice to be done in this case, I feel that Scott Hain

18

should also be sentenced to death.  Somebody with his mind-set should not be allowed to get off with anything less than the death penalty.  There is absolutely no reason why anyone else should ever be subjected to his heinous acts of violence and to go through the pain and suffering that our families have had to endure for the past seven years.

Id. at 214-17.

Tena Houghton, victim Michael Houghton's wife, testified in pertinent part:

I cannot watch a t.v. show or a movie with a fire scene in it, without closing my eyes or turning away, because these scenes bring back the pictures in my mind of Michael's body kicking and struggling and searching for a way out of that trunk.  The heat, the fear, the pain that Michael suffered, I can't even begin to comprehend.  The mental pictures of this man that I loved so deeply being burnt alive to the point of being unrecognizable are almost unbearable.

Id. at 220.

Scott Hain was fully aware that he was taking the life of two young and beautiful people, so aware, in fact, that he went back to the burning car, not to stop this horrible thing but to make sure it was going to do the job and make sure that Michael and Laura Lee would die.  He heard Michael and Laura Lee screaming with pain and terror, saw the car burning, but still did nothing to stop the horrible set of events which he had set into motion.

Id. at 223.  Delma Houghton, Michael Houghton's mother, testified: "I've tried holding a lighted match to my finger, but I jerked it away.  I tried touching the electric element in my stove, but I couldn't.  I wanted to hurt myself and take away some of Mike's pain."

Id. at 226.  She further testified

I never had a chance to say goodbye to Mike.  His body was so charred, he had to be buried in a plastic bag.  His beautiful hair was burned off, his nimble fingers were burned off.  The medical examiner says his sparkly and gentle eyes were like hardboiled eggs, and he tried until he could try no more to beat the trunk open.

19

Id. at 228.

> I do want justice for all of us who loved him, but mostly for Michael and Laura Lee, who are not here to speak for themselves. I believe Scott Allen Hain should be sentenced to death. He did not know Mike or Laura Lee, nor did he care who they were. He wanted to kill someone. We had to have our 10-year-old Golden Retriever put to sleep. I held her while the lethal injection was administered. She quivered a little and went gently to sleep. All I could think of was that I wished Mike and Laura Lee could have met death so gently.
>
> Until the death penalty is carried out, there is always the chance he could be released. I believe if you take a life, your life should be taken unless it is self-defense or to save the life of another. The only true justice would be to have Mike and Laura Lee returned to us. We know that cannot be. I feel our families have been serving a death sentence for almost seven years. Mike and Laura Lee received the death penalty without a trial, with no appeals, with no mercy and for no reason; they had committed no crime.

Id. at 229. Ashley Houghton, Michael Houghton's father, testified in part:

> All that I, Michael and his family want is justice. I believe that the death sentence is deserved. The brutal way Michael was murdered, the brutal way the murder was carried out and the suffering that Michael and Laura Lee went through in the trunk of the car shows the total disregard for – for life that Scott Hain has. He deserves the death penalty.

Id. at 234.

Hain challenged the admission of this testimony in his direct appeal following the

resentencing proceedings.[8] The OCCA concluded that two portions of the challenged

---

[8] Hain specifically highlighted only three of these statements: "Delma Houghton's statement she wished her son could have died a gentle death, as the family dog had experienced who was given a lethal injection, quivered a little and went to sleep; [William] Sanders' opinion death was the only appropriate punishment for Appellant and Tena Houghton's references to the unbearable pain of burning to death." Hain II, 919 P.2d at 1144.

testimony should not have been admitted, but were nevertheless harmless:

> Title 22 O.S.Supp.1993, § 984 provides victim impact evidence should be limited to the "financial, emotional, psychological, and physical effects," or impact of the crime itself on the victim's survivors; as well as some personal characteristics of the victim. As long as these personal characteristics show how the loss of the victim will financially, emotionally, psychologically, or physically impact on those affected, it is relevant, as it gives the jury a "glimpse of the life" which the defendant "chose to extinguish." However, these personal characteristics should constitute a "quick" glimpse, and its use should be limited to showing how the victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed. At trial, objections to victim impact evidence are to be based upon its relevance to the guidelines set forth in § 984. Objections such as those made in the present case, while legitimate concerns, are not proper and do not provide sufficient ground to exclude any evidence.
>
> Reviewing the challenged comments, we find only one improper. Section 984(1) defines victim impact statements and allows for the victim's opinion of a recommended sentence. We find this includes the opinion of a member of the victim's immediate family as defined in 22 O.S.Supp.1993, § 984(2) regarding a recommended sentence. Therefore, Mr. Sanders' opinion of the appropriateness of the death penalty was in accordance with the statutory provisions. (Footnote omitted.)[9]
>
> Section 984(1) also provides for information about the manner in which the crime was committed. Tena Houghton's statement was therefore relevant. However, Delma Houghton's comment was not relevant to the manner in which the crime was perpetrated, nor was it relevant to the financial, emotional, psychological, or physical impact of the crime on the victim's survivors. It was purely an emotional plea which is not statutorily permitted. The consequences of the improper admission of this statement is addressed in the Mandatory Sentence Review.

---

[9] In the omitted footnote, the OCCA acknowledged that the "evidence may not pass scrutiny by the United States Supreme Court" in light of its decision in Payne v. Tennessee, 501 U.S. 808, 830 (1991). Hain II, 919 P.2d at 1144 n.3. The OCCA nevertheless concluded that "[a]ny error in the admission of the evidence [wa]s harmless." Id.

21

Hain II, 919 P.2d at 1144 (internal citations omitted).

> Upon our review of the record and careful weighing of the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. Under the record before this Court, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S. Supp. 1987, § 701.13(C), in finding that the aggravating circumstances outweighed the mitigating evidence. Any improper victim impact evidence admitted was harmless beyond a reasonable doubt. There was sufficient evidence, independent of the victim impact evidence, to support the aggravating circumstances.

Id. at 1149.

In Booth v. Maryland, 482 U.S. 496, 501-02 (1987), the Supreme Court addressed the question of "whether the Eighth Amendment prohibits a capital sentencing jury from considering victim impact evidence." The petitioner in Booth had been convicted of two counts of first-degree murder and sentenced to death. During the sentencing phase of his trial, the prosecution, consistent with Maryland law, presented a written victim impact statement (VIS) that "provided the jury with two types of information. First, it described the personal characteristics of the victims and the emotional impact of the crimes on the family. Second, it set forth the family members' opinions and characterizations of the crimes and the defendant." Id. at 502. The Supreme Court, by a 5-4 majority, concluded that victim impact evidence was per se inadmissible during the sentencing phase of a capital trial, except to the extent that it related "directly to the circumstances of the crime." Id. at 507 n.10. With respect to the first type of information contained in the VIS, the Court determined it might "be wholly unrelated to the blameworthiness of a

22

particular defendant," id. at 504, and, in any event, "create[d] an impermissible risk that the capital sentencing decision w[ould] be made in an arbitrary manner." Id. at 505. As for the second type of information contained in the VIS (family members' opinions and characterizations of the crimes), the Court concluded it could "serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." Id. at 508.

In 1989, the Court extended the rule announced in Booth to statements made by a prosecutor to a capital sentencing jury regarding the personal qualities of the victim. See South Carolina v. Gathers, 490 U.S. 805 (1989).

In 1991, the Court revisited these issues, and partially reversed course, in Payne v. Tennessee, 501 U.S. 808 (1991). The petitioner in Payne was sentenced to death for the murders of a 28-year-old woman and her 2-year-old daughter. During the sentencing phase of trial, the prosecution presented testimony from the adult victim's mother, who testified about the physical and emotional impact the murders had on the adult victim's 3-year-old son (who had also been assaulted by the defendant but had survived). The prosecutor commented on this testimony during closing arguments in the sentencing phase and emphasized the continuing effects of the boy's experience. The Court, expressly overruling its decisions in Booth and Gathers, held that "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that

23

subject, the Eighth Amendment erects no per se bar." Id. at 827.[10]  Instead, the Court

held, the only constitutional limitation on such evidence is if it "is so unduly prejudicial

that it renders the trial fundamentally unfair." Id. at 825.  In such an event, the Court

indicated, "the Due Process Clause of the Fourteenth Amendment provides a mechanism

for relief." Id.

Importantly, Payne left one significant portion of Booth untouched.  Unlike Booth,

Payne did not involve any testimony or statements from the victim's family members

regarding their "opinions and characterizations of the crimes and the defendant." Booth,

482 U.S. at 502.  Thus, although the Court expressly overruled Booth, it stated in a

footnote:

---

[10]  In reaching this conclusion, the Court specifically outlined why victim impact evidence was relevant to a capital jury's sentencing decision:

> We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.  "[T]he State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family." Booth, 482 U.S., at 517, 107 S. Ct. at 2540 (WHITE, J., dissenting).  By turning the victim into a "faceless stranger at the penalty phase of a capital trial," Gathers, 490 U.S., at 821, 109 S. Ct. at 2216 (O'CONNOR, J., dissenting), Booth deprives the State of the full moral force of its evidence and may prevent the jury from having before it all the information necessary to determine the proper punishment for a first-degree murder.

Id. at 825.

> Our holding today is limited to the holding[] in <u>Booth</u> . . . that evidence . . . relating to the victim and the impact of the victim's death on the victim's family [is] inadmissible at a capital sentencing hearing. <u>Booth</u> also held that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment. No evidence of the latter sort was presented at the trial in this case.

<u>Payne</u>, 501 U.S. at 830 n.2. To date, three circuits, including our own, have expressly recognized that the portion of <u>Booth</u> prohibiting family members of a victim from stating "characterizations and opinions about the crime, the defendant, and the appropriate sentence" during the penalty phase of a capital trial survived the holding in <u>Payne</u> and remains valid. <u>See</u> <u>Parker v. Bowersox</u>, 188 F.3d 923, 931 (8th Cir. 1999), <u>cert. denied,</u> 529 U.S. 1038 (2000); <u>United States v. McVeigh</u>, 153 F.3d 1166, 1217 (10th Cir. 1998); <u>Woods v. Johnson</u>, 75 F.3d 1017, 1038 (5th Cir. 1996); <u>Robison v. Maynard</u>, 943 F.2d 1216, 1217 (10th Cir. 1991); <u>but</u> <u>see</u> <u>Alley v. Bell</u>, 101 F. Supp. 2d 588, 648 n.46 (W.D. Tenn. 2000) ("Petitioner argues that <u>Payne</u> left portions of <u>Booth</u> intact, but this Court does not read <u>Payne</u> as so limited.").

Turning to Hain's arguments, we agree that some of the testimony he now challenges was improperly admitted and resulted in the violation of his Eighth Amendment rights. Most significantly, four of the five witnesses (William Sanders, Carol Lee Sanders, Delma Houghton and Ashley Houghton) expressed their views of the appropriate punishment for Hain, all stating (or at least strongly implying) they thought he should receive the death penalty. This testimony was clearly contrary to <u>Payne</u> and <u>Booth</u>

25

and resulted in a violation of Hain's Eighth Amendment rights. Further, four of the witnesses (Carol Lee Sanders, Tena Houghton, Delma Houghton and Ashley Houghton) commented in one way or another on Hain and the crime (e.g., stating it was hard "to imagine that anyone could have that much hate and meanness in them," criticizing Hain for being "fully aware that he was taking the life of two young and beautiful people," for returning to the car "to make sure it was going to do the job and make sure that Michael and Laura Lee would die," and for failing to do anything "to stop the horrible set of events which he had set into motion"). Again, this testimony was contrary to Payne and Booth, and violated Hain's Eighth Amendment rights.

The remaining question is whether the error was harmless, or instead requires the reversal of Hain's death sentences. The OCCA addressed this point in disposing of Hain's direct appeal following resentencing, concluding that any constitutional errors arising out of the admission of the victim impact testimony were "harmless." Hain II, 919 P.2d at 1144 n.3. Under the AEDPA, our task is to decide whether the OCCA's conclusion was reasonable.[11] See 28 U.S.C. § 2254(d)(1).

---

[11] The decision in Booth does not expressly indicate whether the Court believed such errors to be trial errors subject to harmless error review, or structural error requiring automatic reversal. Further, the Court's language remanding the case to the Maryland state courts is somewhat cryptic and could conceivably be construed either way. See 482 U.S. at 509 ("The decision of the Maryland Court of Appeals is vacated to the extent that it affirmed the capital sentence. The case is remanded for further proceedings not inconsistent with this opinion."). Nevertheless, we do not believe the OCCA unreasonably applied Booth in concluding that such errors are subject to harmless error review. See Clemons v. Mississippi, 494 U.S. 738, 754 (1990) (indicating it is

26

After carefully examining the transcript of the resentencing proceedings, three factors convince us that the OCCA's conclusion was reasonable under § 2254(d)(1). First, the horrific nature of the murders was uncontroverted. Indeed, Hain's defense counsel conceded, and the jury specifically found, that the murders were especially heinous, atrocious or cruel under Oklahoma law. Second, the evidence of Hain's guilt was substantial. At best, Hain was a knowing and willing participant in a robbery and kidnapping scheme that resulted in the arson of a stolen vehicle and the deaths of two victims. At worst, Hain intended to cause the deaths of the two victims, and not only assisted in setting fire to the stolen vehicle, but stood by and watched as the victims screamed for help, and subsequently returned to the scene of the crime to ensure that the vehicle was still burning. Finally, substantial evidence supports the jury's finding that Hain was a continuing threat to society. In particular, the prosecution presented evidence that Hain and co-defendant Lambert committed a string of violent crimes, including rapes, sexual assault, kidnapping, and attempted murder, between July and September 1987. In sum, we conclude beyond a reasonable doubt that the jury would have imposed a sentence of death even absent the improper victim impact testimony.

---

constitutionally permissible for a state appellate court to engage in reweighing or harmless-error analysis when errors have occurred in a capital sentencing proceeding); Rose v. Clark, 478 U.S. 570, 579 (1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis."); United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir. 1998) (applying harmless error review where trial court may have abused its discretion in admitting certain victim impact testimony).

Hain also argues that the trial court erred in failing to instruct the jury regarding the proper use of the victim impact testimony. Hain's defense counsel did not raise this issue at trial, however, and it does not appear that Hain attempted to present the issue to the OCCA. Because the claim is unexhausted and would be procedurally barred under Oklahoma law if Hain now attempted to present it to the OCCA, see Okla. Stat. tit. 22, § 1086, we need not address it as no cause and prejudice has been alleged, and Hain cannot establish that a fundamental miscarriage of justice would occur if the claim is not addressed. See Coleman, 501 U.S. at 735 n.1.

*Violation of Hain's Fifth Amendment rights*

Hain contends the trial court violated his Fifth Amendment rights when, during his sentencing phase testimony, it compelled him to answer questions from the prosecutor regarding unadjudicated crimes he may have committed in the State of Kansas. In seeking to establish the continuing threat aggravator, the prosecution presented evidence of both adjudicated and unadjudicated crimes committed by Hain. With respect to adjudicated crimes, the prosecution presented evidence that, on September 24, 1987, in the City of Tulsa, Hain and Lambert robbed, kidnapped and attempted to murder Derek Wunsch and Heather Rogers (Hain pled guilty to these crimes). With respect to unadjudicated crimes, the prosecution presented evidence of two offenses committed by Hain and Lambert in the State of Kansas. The first of these was the July 10, 1987,

28

abduction, rape and sodomy of Wichita resident Mary Hofford. The second was the

September 5, 1987, assault and rape by instrumentation of Goddard resident Phyllis

Comstock. In all three of these instances, the prosecution presented testimony from the

victims of the crimes.

The OCCA described Hain's response to this evidence and the subsequent chain of

events:

> Prior to the introduction of this evidence, Appellant objected, arguing that such evidence forced him either to let the evidence go unanswered or give up his Fifth Amendment right to silence and respond to the evidence. The trial court ruled that if Appellant needed to respond to the evidence, he would be granted immunity from prosecution for the unadjudicated offenses.
>
> During the defense case-in-chief, Appellant took the witness stand. He testified to his childhood, the 1987 robbery, kidnaping and attempted murder of Derek Wunsch and Heather Rogers (crimes for which Appellant pled guilty), and the circumstances surrounding the Houghton and Sanders murders. On cross-examination, the prosecution asked Appellant if he had committed a rape and burglary against Ms. Comstock. Appellant denied committing the offenses. There was not a timely objection to this first question. However, after Appellant's response, defense counsel objected on grounds the evidence was an unadjudicated offense, and Appellant was being forced to give up his Fifth Amendment right to silence. Counsel informed the court he was going to advise Appellant not to answer the question and not to answer any questions pertaining to the Comstock and Hofford matters. The trial court overruled the defense objection, granted Appellant immunity from prosecution in the Comstock and Hofford matters and directed Appellant to answer questions on those matters or be held in contempt of court. When asked about the rape and sodomy committed against Ms. Hofford, Appellant denied commission of those offenses.

Hain II, 919 P.2d at 1140-41.

In his direct appeal following resentencing, Hain complained about the trial court

29

forcing him to respond to the prosecution's questions. The OCCA agreed that the trial

court's actions were improper, but concluded the resulting error was harmless:

> [W]e find the trial court erred in granting Appellant immunity in exchange
> for his testimony concerning the unadjudicated offenses. The trial court had
> no authority to grant Appellant immunity from the prosecution of offenses
> committed in the State of Kansas. The legal authority of judges in the State
> of Oklahoma extends only to offenses committed in the State of Oklahoma.
> 20 O.S. 1991, § 91.1. Criminal offenses committed in other states [are]
> beyond the purview of the Oklahoma state judicial system.
>
> This erroneous grant of immunity resulted in the admission of
> testimony in violation of the Fifth Amendment Self-Incrimination Clause.
> This error, albeit constitutional, is subject to a harmless error analysis as it
> was an error in the trial process itself, and not a defect affecting the entire
> framework of the trial. . . .
> * * *
> In the present case, evidence of the unadjudicated offenses, as
> testified to by Ms. Hofford and Ms. Comstock, was properly admitted.
> When asked about those unadjudicated offenses at trial, Appellant denied
> them. The jury had no more information before it in deciding the existence
> of the "continuing threat" aggravator than if Appellant had remained silent
> on the issue. In fact, Appellant's denial may have been more to his benefit
> since his silence could have invited negative inferences from the jury.
> Appellant's testimony on the unadjudicated offenses had little if any impact
> on the jury's consideration of the "continuing threat" aggravator.
> Therefore, we find admission of Appellant's testimony concerning the
> unadjudicated offenses harmless beyond a reasonable doubt. This
> assignment of error is denied.

Hain II, 919 P.2d at 1141-42.

"The Fifth Amendment provides that '[n]o person . . . shall be compelled in any

criminal case to be a witness against himself.'" Ohio v. Reiner, 532 U.S. 17, 121 S. Ct.

1252, 1254 (2001) (quoting U.S. Const., Amdt. 5). "[T]his privilege extends not only 'to

answers that would in themselves support a conviction . . . but likewise embraces those

30

which would furnish a link in the chain of evidence needed to prosecute the claimant.'" Id. (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)). "'[I]t need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" Id. (quoting Hoffman, 341 U.S. at 486-487). The Supreme Court has given the privilege a broad scope, explaining that "it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar v. United States, 406 U.S. 441, 444-45 (1972) (footnote omitted). Consistent with this broad interpretation, the Court has held that "this privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." Slochower v. Board of Higher Ed. of New York City, 350 U.S. 551, 557-558 (1956).

Despite the Court's broad interpretation of the privilege, it has long been held that a criminal defendant can waive the privilege by taking the stand in his own behalf. See McGautha v. California, 402 U.S. 183, 215 (1971). In such circumstances, the defendant is subject to cross-examination "on matters reasonably related to the subject matter of his direct examination." Id.

Here, the OCCA was clearly correct in concluding that the trial court exceeded its authority when it purportedly granted Hain immunity from prosecution on the unadjudicated crimes. Although the OCCA in turn concluded that this resulted in a

31

violation of Hain's Fifth Amendment rights, we disagree. We instead agree with the federal district court that Hain made at least two remarks during his direct examination that "opened the door" for the prosecution to cross-examine him regarding the two unadjudicated Kansas crimes. First, Hain testified on direct examination that he did not meet Lambert until early September 1987. Resentencing Tr., Vol. II at 370. Obviously, this testimony contradicted Hofford's testimony that she was abducted, kidnapped, and sexually assaulted by Hain and Lambert in Wichita on July 10, 1987. Second, and perhaps most importantly, Hain testified on direct exam that he had never committed a violent act prior to the September 24, 1987, attack on Wunsch and Rogers. Id. at 383. Clearly, this testimony was contradictory to the testimony of both Hofford and Comstock. Thus, the prosecution's questions to Hain regarding whether he was involved in the Comstock and Hofford crimes was reasonably related to the subject matter of Hain's direct examination, and no violation of Hain's Fifth Amendment rights occurred as a result of those questions.

*Propriety of imposing death sentence on juvenile offender*

Hain argues that, because the murders for which he was convicted occurred when he was seventeen years old, the International Covenant on Civil and Political Rights (ICCPR), which the United States ratified on September 8, 1992, prohibits him from being put to death for those crimes. Although Hain acknowledges that the United States

32

Senate, in ratifying the ICCPR, placed a reservation on the specific provision (Article 6 paragraph 5) prohibiting imposition of the death penalty on juveniles, he argues this purported reservation was invalid and ineffective because the Constitution does not give the Senate authority to make reservations to treaties, the reservation is specifically prohibited by the terms of the ICCPR itself, the reservation violates the object and purpose of the ICCPR, and in any event the prohibition against executing juveniles is a peremptory norm of international law, or *jus cogens*, that is accepted and recognized by the international community and that cannot be derogated.

It is debatable whether Hain sufficiently presented these arguments to the Oklahoma courts. In his direct appeal following resentencing, Hain asserted generally that the imposition of the death penalty for juveniles was an international human rights issue and that the United States was "a signatory to the Geneva Convention and two other treaties which prohibit[ed] the execution of persons under the age of 18." See Hain's Br. filed 9/18/95, at p.18. Hain did not, however, specifically cite the ICCPR. In rejecting Hain's direct appeal, the OCCA did not address Hain's arguments. The district court, in considering Hain's federal habeas petition, concluded that Hain had fairly presented his arguments to the OCCA and thus had satisfied the exhaustion requirements.

Assuming, arguendo, that Hain adequately presented his arguments to the OCCA, we find no merit to them. "In 1992, the United States Senate ratified the ICCPR with various reservations, understandings, [and] declarations." Beazley v. Johnson, 242 F.3d

33

248, 263 (5th Cir.), cert. denied, 122 S. Ct. 329 (2001); see Buell v. Mitchell, 274 F.3d

337, 371 (6th Cir. 2001) (same).  Included among these was the following proviso:

> [T]he United States reserves the right, subject to its Constitutional
> constraints, to impose capital punishment on any person (other than a
> pregnant woman) duly convicted under existing or future laws permitting
> the imposition of capital punishment, including such punishment for crimes
> committed by persons below eighteen years of age.

138 Cong. Rec. S4783 (1992).  Thus, contrary to Hain's arguments, Article 6 paragraph 5

of the ICCPR does not prohibit Oklahoma from imposing capital punishment for crimes

committed by a person under eighteen years of age.

Even if, as suggested by Hain, the above-quoted reservation were void (for any of

the reasons suggested by Hain), it is clear that the ICCPR is not binding on the federal

courts.  See Buell, 274 F.3d at 372.  "'Courts in the United States are bound to give effect

to international law and to international agreements, except that a 'non-self-executing'

agreement will not be given effect as law in the absence of necessary authority.'"  Id.

(quoting Restatement (Third) of Foreign Relations Law § 111 (1987)).  When the Senate

ratified the ICCPR, it specifically declared that the provisions thereof were "not self-

executing."  138 Cong. Rec. S4784.  And, since that time, Congress has never "enacted

implementing legislation for" the ICCPR.  Buell, 274 F.3d at 372; see Beazley, 242 F.3d

at 267-68 (citing cases and other sources indicating that the ICCPR is not self-executing).

Finally, there appears to be no basis for granting Hain federal habeas relief on the

grounds that imposition of the death penalty for crimes committed while a juvenile would

34

violate *jus cogens* norms of international law. It is far from certain that abolition of the death penalty for juveniles is a customary norm of international law that has "risen to the level that the international community as a whole recognizes it as *jus cogens*, or a norm from which no derogation is permitted." Buell, 274 F.3d at 373. Instead, it appears the countries that have abolished the death penalty in these instances have done so for "moral" or "political" reasons (as opposed to any "sense of legal obligation"). Id. Even if the abolition of the death penalty for juveniles could be considered a "customary norm of international law" or "*jus cogens*," this does not appear to be a sufficient basis to invalidate Hain's death sentences. Id. In Stanford v. Kentucky, 492 U.S. 361, 380 (1989), a majority of the Supreme Court held that the imposition of capital punishment on an individual for a crime committed at sixteen or seventeen years of age does not constitute cruel and unusual punishment under the Eighth Amendment. Although the dissent in Stanford argued that, "[w]ithin the world community, the imposition of the death penalty for juvenile crimes appears to be overwhelmingly disapproved," id. at 390 (Brennan, J., dissenting), the majority implicitly rejected this argument in holding the practice constitutional and in noting that "no modern societal consensus" forbids the imposition of the death penalty on individuals age sixteen or seventeen. In light of Stanford, which essentially authorizes the imposition of the death penalty upon a criminal defendant such as Hain, "the determination of whether customary international law prevents [the] State [of Oklahoma] from carrying out the death penalty . . . is a question

that is [properly] reserved to the executive and legislative branches of the United States government, as it [is] their constitutional role to determine the extent of this country's international obligations and how best to carry them out."  Buell, 274 F.3d at 376.

*Cumulative error*

Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial.  See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.").

The judgment of the district court is AFFIRMED.